In its twenty-three pages, the dissent raises, in good faith, serious concerns about the manner in which the Summit County Children Services Board ("CSB") handled the welfare of Appellant Woodall and her five children. The dissent expresses the outrage which right thinking persons must feel when presented with such a tragic case. But neither outrage nor previous errors define the present duty of this Court. Instead, this Court is charged by Ohio law to determine whether the trial court abused its discretion when it determined that clear and convincing evidence supported an award of permanent custody of Appellant Woodall's children to CSB.
This Court does not take that duty lightly, for as the dissent aptly points out, parenting is a fundamental right, Troxel v. Granville (2000),530 U.S. 57, not to be disturbed absent evidence that termination of parental rights is a necessity and in the best interests of the children.In re Wise (1994), 96 Ohio App.3d 619, 624. In fulfilling its duty, this Court cannot allow the present best interests of the children to get lost in the outcry over how events complained of could have happened. Nor is it our job to instruct on the wisdom of the General Assembly when it enacted R.C. 2151.414(B)(1). That law is very clear, and its constitutionality has not been challenged in this matter.
Were this Court to speculate that CSB is partially responsible in this case for not providing better support services or that the separation of the children from Appellant Woodall precipitated some of their behavioral problems, these factors do not obviate the only pertinent issue before this Court: whether the trial court abused its discretion in awarding CSB permanent custody, and whether such award was in the children's best interests. Such is the cold harsh reality before this Court. This Court must act and, no matter its decision, there will not be a happy solution.
I respectfully disagree with the dissent and point out that the Court is being asked to act with the wisdom of Solomon in circumstances where there can be no perfect justice. As imperfect as the result might be, its efforts must be to secure the best interests of the children now. It can only be hoped that agencies charged with the review of such matters will benefit from the painstaking detail of the dissent and act accordingly.
The majority has concluded that the trial court did not abuse its discretion for several reasons. First, leaving a six-year-old child at home alone to care for four younger siblings, no matter the duration of time or the reasons argued in justification, is dangerous and irresponsible, and the evidence indicates that this was not a one time event.[32] Second, Appellant Woodall has demonstrated an inability to accept responsibility for her own life choices and a present determination to do things her own way despite her attendance at any number of parenting classes.[33] Such an attitude dispels any confidence that Appellant Woodall will accept guidance in the future or put the best interests of her children first. Third, the prolonged involvement of CSB with this family and the turmoil associated with shuffling these children between homes is exceedingly detrimental to these children and only serves to further enhance the behavioral issues facing them.[34] Fourth, the witnesses who had frequent interaction with the children testified about the setbacks the children experienced each time they visited with Appellant Woodall.[35] Finally, the guardian ad litem, the representative for the children, stated that, when considering the needs of the children and Appellant's Woodall's ability to meet those needs as exhibited throughout the course of the case, it was in the children's best interests that permanent custody be granted to CSB. In fact, the guardian ad litem indicated that "it's time to do the right thing by these children and award custody of all these children to [CSB]."
In the end, the clear mandate from the General Assembly is that children at risk need a present remedy before more tragic circumstances intervene. I view the record as supporting the termination of Appellant Woodall's parental rights now. The trial court did not act without reason, in an arbitrary manner or unconscionably. Hence, I concur in the judgment of the majority.
[32] I believe such abandonment to be a compelling factor when taken in combination with other pertinent factors. Additionally, the record suggests that some harm did befall Ariz. while home alone that day in that she received a burn on her finger while cooking for her younger siblings. The burn itself was not severe in nature, but it does represent the potential for much greater tragedy. The dissent has alleged that Appellant Woodall's testimony that Ariz. received the burn while under her supervision is unchallenged. On the other hand, the police investigation as attested to in a sworn statement presents evidence that Ariz. received the burn while home alone and not while under Appellant Woodall's supervision. The trial court was vested with the responsibility of weighing the evidence when making its decision.
[33] Margaret Campbell, a case aide who supervised the visitations between Appellant Woodall and the children, testified to several instances that exemplified Appellant Woodall's obstinance and refusal to accept any assistance or direction to improve her parenting abilities. Ms. Campbell indicated that on one occasion when she asked Appellant Woodall to control the children and supervise them, Appellant Woodall said "leave [me] alone. These are [my] kids and [I'll] do what [I] want with them." She further testified that when asked to put the food away so that they could begin the visitation Appellant Woodall would usually respond "Leave me alone. I know what I'm doing." Ms. Campbell testified that Appellant Woodall was given leeway in regard to her direction of the children but that Appellant Woodall "doesn't listen to me and she doesn't listen to anyone that tells her what to do or gives her any kind of suggestions." Ms. Campbell testified that Appellant Woodall believes that children should act this way and that such behavior should be permitted because they are her kids. Such behavior continued until the visits were terminated. At the last visit between Appellant Woodall and the children, Appellant Woodall was discussing matters about the case with Ariz. in violation of the rules at the visitation center. When Ms. Campbell requested that she not do that, Appellant Woodall responded "[l]eave me alone." When Ms. Campbell requested a second time that Appellant Woodall not talk about case issues with the children, Appellant Woodall again refused to comply, demanding that Ms. Campbell "[l]eave [her] alone." The visit was then ended; however, Appellant Woodall refused to leave and pinned Ms. Campbell against the wall and again stated "[l]eave me alone."
Christina Miller, the CSB caseworker also testified that Appellant Woodall denies any responsibility for the children's behavior. She further testified that in spite of the parenting classes Appellant Woodall has completed, she still fails to exhibit appropriate parenting skills.
[34] The dissent appears to allege that the problems suffered by the children cannot be attributed to Appellant Woodall because the problems were not diagnosed until after the children were removed. The evidence indicates, however, that the foundation for these problems began with Appellant Woodall. In point of fact, Appellant Woodall herself admitted that the teachers from the Head Start program had told her about behavioral problems with Dasha before the children were removed from her custody. While Ariz, Taija, and Renisha were not enrolled in Head Start, the preexisting problems with Dasha support the conclusion that the later diagnosed problems suffered by all of the children originated while in Appellant Woodall's custody. Additionally, there was testimony by various witnesses that support the conclusion that the problems with the other children were not wholly attributable to their removal from Appellant Woodall's custody.
Following the start of this case, Ariz. was referred to Akron Child Guidance for an evaluation because of erratic, out of control behaviors at school. She was acting out in school, swearing, hitting, biting, and being disruptive. Joann Brown, Ariz's counselor at Akron Child Guidance indicated that Ariz. suffered from mood swings. Ms. Brown further testified that such mood swings are attributable to events that transpired while Ariz. was in Appellant Woodall's custody, such as being left to supervise the younger children, witnessing violence, and being left alone. Specifically, Ms. Brown indicated that Ariz. had told her she witnessed Appellant Woodall become violent in the home on several occasions and that on one occasion she witnessed Appellant Woodall going after other individuals in the house with a gun. Ms. Brown indicated that the stress of being removed from Appellant Woodall could have contributed to the extent of the behavioral issues and emotional problems, but again reiterated the impact of the circumstances while in Appellant Woodall's care upon such problems.
Mark Schaeffer, a counselor with United Disability Services Developmental Pre-school, testified that he had completed assessments on Derrick, Dasha, and Renisha and that each of them has developmental delays. Mr. Schaeffer testified that a connecting factor between children with such delays would be "the amount and quality of stimulation in the home and the consistency of it from day to day." He further indicated that reading, lots of language, and firm discipline would contribute to developmental successes and that these elements must be started from day one. He testified that without such factors a child is at risk for developmental and emotional troubles.
[35] Ms. Romanowski, Ariz's teacher, testified that Ariz. would kick, bite, and scratch her and the other students. She testified that she was frequently the target of Ariz's attacks and that such behavior would appear whenever she would give Ariz. instructions, even directions as simple as "sit in your seat." Ms. Romanowski testified that Ariz. was making strides in overcoming these behavioral issues, but that after a visit with Appellant Woodall, Ariz's behavior would regress and it would take a couple of days to get her back to the previous levels of achievement.
Ms. Campbell testified that she had observed the children both with Appellant Woodall and without. She stated that when Appellant Woodall was not around you could set boundaries on the children and control their behavior, but that when Appellant Woodall was present, the children refused to listen to anyone. She further testified that she transported the children to the visits and that while the children were excited to see each other, such excitement did not rise to the level of chaos attendant with the visits with Appellant Woodall.