This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants, John and Paula Danella, have appealed from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and granted permanent custody of their two minor children to Summit County Children Services Board ("CSB"). This Court affirms.
 I.
The Danellas are the parents of two children, Christine Rogers (born July 15, 1997) and John Danella, Jr. (born June 13, 1998).[1] CSB first became involved with this family after Christine wandered away from home. The family remained involved with CSB on a voluntary basis. The children were removed from the home after Christine suffered a fractured collarbone in early November 1999 and her parents failed to seek medical treatment for her. CSB was also concerned about the unsanitary conditions in which the children were living. On January 7, 2000, the children were adjudicated dependent and placed in the temporary custody of CSB.
On January 10, 2001, CSB moved for permanent custody of both children. A hearing on the motion commenced on April 25, 2001.[2] The trial court granted the motion and placed the children in the permanent custody of CSB. Both parents have appealed.
 II. Assignment of Error Number One The trial court erred in its discretion to award permanent custody of the children as such decision was against the manifest weight of the evidence.
 Assignment of Error Number Two The trial court erred in its discretion to award permanent custody of the children as there was not sufficient evidence to support the decision.
 Assignment of Error Number Three The trial court abused its discretion in ignoring or failing to follow the statutory requirements in the consideration of the motion of permanent custody filed by Children Services Board.
 Assignment of Error Number Five Appellants substantially complied with their case plan requirements and therefore a grant of permanent custody was contrary to law.
This Court will address the first three assignments of error together because the Danellas argued them jointly. The Danellas' fifth assignment of error will be addressed here as well because it is closely related to their first three.
Termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. In re Wise (1994),96 Ohio App.3d 619, 624. Before a juvenile court can terminate parental rights and award permanent custody of a child to the moving agency, it must find clear and convincing evidence of both parts of a two-prong test.
First, it must find that one of four reasons enumerated in R.C.2151.414(B)(1)(a)-(d) exists for not returning the child to either of his parents: (a) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, (b) the child is abandoned, (c) the child is orphaned and there are no relatives available to take the child, or (d) the child has been in the temporary custody of one or more children services agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
To satisfy the second prong of the test, the court must find that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C.2151.414(B)(1). See, also, In re William S. (1996), 75 Ohio St.3d 95,97-98.
The Danellas' first, second, third, and fifth assignments of error relate to the trial court's findings on the first prong of the permanent custody test. The trial court found that the first prong of the test was satisfied for several reasons: (1) that the children could not be placed with their parents and should not be placed with them (a) because they had failed to substantially remedy the conditions that caused the children to be removed from the home, and (b) because they each suffered from chronic mental illness, mental retardation, physical disability, or chemical dependency; and (2) that the children had been in the temporary custody of CSB for more than twelve of the past twenty-two consecutive months.
The Danellas challenge only the trial court's finding that they had failed to substantially remedy the conditions that caused the removal of the children and, consequently, that the children could not or should not be placed with either parent. See R.C. 2151.414(E)(1). However, as indicated above, "[t]he juvenile court [was] required to make an additional finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent only where the child has not been abandoned, orphaned or has not been in temporary custody for twelve or more months of a consecutive twenty-two month period." In re Fox (Sept. 27, 2000), Wayne App. Nos. 00CA0038, 00CA0039, 00CA0040, and 00CA0041, unreported, at 10-11, citing R.C.2151.414(B)(1).
Even if the trial court erred in finding that the children could not be placed with their parents within a reasonable time, its decision can be supported by its finding that the children had been in the temporary custody of CSB for more than twelve of the prior twenty-two months. That finding is clearly supported by the record in this case. R.C. 2151.414(D) provides that "a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from the home."
The record reveals that the Danella children were removed from the home in early November 1999. They were adjudicated dependent and neglected and placed in the temporary custody of CSB on January 7, 2000. Thus, using either date, the children had been in the temporary custody of CSB, for purposes of R.C. 2151.414(D), since early January 2000. The permanent custody hearing commenced on April 25, 2001. Thus, at that time, the children had been in the temporary custody of CSB for fifteen and one-half months. Consequently, the trial court did not err in finding that the first prong of the permanent custody test was satisfied. The first, second, third, and fifth assignments of error are overruled.
 Assignment of Error Number Four Children Services Board did not use reasonable and diligent efforts to reunify the family.
The Danellas contend that CSB failed to make reasonable and diligent efforts to reunify this family. The Danellas suggest that CSB was required to prove, at the permanent custody hearing, that it had exerted reasonable and diligent efforts to reunify the family. Although R.C.2151.414(E)(1) does refer to "reasonable case planning and diligent efforts by the agency[,]" it addresses those efforts within the context of the parent's failure to remedy the circumstances causing the child's removal from the home. "R.C. 2151.414(E)(1) places no duty on the agency to prove that it exerted reasonable and diligent efforts toward reunification." In re Thompson (Jan. 10, 2001), Summit App. No 20201, unreported, at 12, citing In re Moore (Dec. 15, 1999), Summit App. Nos. 19202 and 19217, unreported, at 24-25. Moreover, in this case, it was not even necessary for CSB to proceed under R.C. 2151.414(E) because the children had been in the temporary custody of CSB for more than twelve months. See R.C. 2151.414(B)(1)(d).
As this court noted in In re Thompson, supra, at 12: "[I]t is R.C.2151.419 that requires the agency to prove to the trial court `at any hearing held pursuant to [the statutes providing for the child's removal from the home]' that it made reasonable efforts to prevent removal of the children and to work toward reunification." See, also, Juv.R. 27(B)(1). The trial court, through a magistrate, found on April 6 and again on July 11, 2000 that CSB had made reasonable efforts to prevent the continued removal of the children from the home. The Danellas failed to raise a timely challenge to either of these findings. See Juv.R. 40(C)(3)(b) (pretrial findings by the magistrate may be appealed to the trial court within ten days). Consequently, they have waived their right to raise this issue on appeal. The fourth assignment of error is overruled.
 Assignment of Error Number Six The trial court erred by granting Children Services Board's motion for permanent custody as permanent custody was not in the children's best interest[s].
When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must:
[C]onsider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed * * * through the child's guardian ad litem[;]
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]
R.C. 2151.414(D)(1)-(4).[3]
The primary evidence of the Danellas' interaction and interrelationship with their children pertained to their CSB-supervised visits with them. The Danellas' attendance at the scheduled visits was not consistent. During the six-month period from mid-July 2000 to mid-January 2001, Mrs. Danella attended only two visits and Mr. Danella attended only one. When they did attend visits, their behavior was often inappropriate, according to both the caseworker and the case aide who supervised many of the visits. For example, on several occasions, the Danellas spoke to their children about the court case or asked them whether they wanted to come home, despite the fact that they were repeatedly told that such discussions were inappropriate and constituted violations of the visitation rules. The Danellas encouraged rough play and hitting by the children. The caseworker testified that, during one visit, the Danellas even encouraged one of the children to hit her. She also observed that Mrs. Danella seemed much more focused on John, Jr. than on Christine and that both parents seemed to be able to focus on only one child at a time, leaving the other child unsupervised. The caseworker also testified that the Danellas sometimes had minimal interaction with either child during visits. The children would often play by themselves and/or the Danellas would talk to each other and ignore the children.
Although the Danellas completed parenting classes, CSB continued to have concerns about their interaction with the children and their inability to provide appropriate activities and guidance for them. Thus, the court ordered them to complete parenting classes again. They did not do so.
The caseworker also expressed CSB's concern that both parents smoke cigarettes despite the fact that John, Jr. has asthma. While living with his parents, John, Jr. required six breathing treatments a day. While living with the foster family in a nonsmoking household, his need for asthma treatments had greatly diminished. Some days, he required no treatments at all.
Both children have some developmental delays, but have shown great progress while in foster care. Since the children were placed with the same foster family in January 2001, Christine's behavior problems have also improved. The foster mother testified that she and her husband have grown attached to the children and that they are very interested in adopting them.
The wishes of the children, who were both under the age of four at the time of the hearing, were expressed through their guardian ad litem. The guardian ad litem expressed particular concern about the parents' failure to visit their children regularly and that they both continue to smoke in the house despite John, Jr.'s asthma. The guardian ad litem also expressed concern about the Danellas' lack of budgeting skills, emphasizing that they had no phone or natural gas service for a long period and that they have no transportation and apparently cannot afford to take the bus. The guardian ad litem recommended that the children be placed in the permanent custody of CSB.
At the time of the hearing, both children had been in the temporary custody of CSB for over fifteen months. This period of time represented a significant portion of the children's lives. For the younger child, John, Jr., this period represented nearly half of his short life. As noted above, the Danellas did not regularly visit their children during this period.
The parents had demonstrated an inability to provide a secure placement for their children. Neither parent was employed at the time of the hearing, although both claimed to be able to work. Instead, they have attempted to support themselves on a very limited income from Social Security and food stamps. During CSB's involvement with them, they have had their natural gas service shut off for extended periods of time, they have been evicted from one apartment for nonpayment of rent, they did not have a phone until shortly before the hearing, and they have never had any transportation. CSB provided them with bus fare because they claimed that they could not afford to take the bus. At the time of the hearing, the Danellas had an outstanding balance on their natural gas bill of $3,000, and they owed over $600 to the cable television company.
CSB was particularly concerned that the Danellas were not able to make ends meet, and this problem was compounded by the fact that they repeatedly allowed other adults to take advantage of them. They have moved from place to place and, at each place they have lived, CSB has discovered other adults living with them. Each time, the Danellas admitted that the other adults paid no rent and contributed no money to pay for food or other expenses. The first adults who were discovered living with them used crack cocaine, and the Danellas expressed concern to CSB that there was cocaine in their home. They had apparently lost control over what was transpiring in their own home.
When CSB visited the home where the Danellas were living at the time of the hearing, they discovered five other adults living there. In addition to the fact that CSB did not know who these people were or why they were living there, CSB was concerned because the home was not large enough for so many people. Mrs. Danella testified that these adults lived there for a month while they looked for work. Again, they contributed nothing toward the rent, the cost of food, or other living expenses.
The fact that the Danellas could not manage their finances, including that they repeatedly allowed others to live with them and essentially take over their home without contributing financially, demonstrated to the trial court that they could not provide a secure placement for their children.
Based on this evidence, the trial court did not err in concluding that permanent custody to CSB was in the children's best interests. The sixth assignment of error is overruled.
 III.
The Danellas' assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
SLABY, P.J., BAIRD, J. CONCUR.
[1] Each parent also has other children not at issue in this case. John Danella voluntarily surrendered his rights to his two other children. Paula Danella has one other child whom she voluntarily placed in the custody of her mother.
[2] Although the maternal grandmother's motion for legal custody was also at issue at the hearing, the denial of that motion has not been challenged on appeal.
[3] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.