DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Sabrina James, has appealed from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to one of her minor children and placed that child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I
James is the mother of Ziara Patterson, who was born on December 3, 1997 with low birth weight and multiple medical problems. Ziara is hearing-impaired, has asthma and other serious breathing problems, feeding problems, weak eye muscles, and many developmental delays. Her doctor opined that Ziara has a genetic syndrome that has not yet been identified. At the age of three years, five months, Ziara was not toilet trained; she could not walk or crawl, but could scoot on her belly; and she could not communicate verbally, but had learned to respond to some sign language. Given her current prognosis, Ziara probably will never become fully ambulatory or fully toilet trained.
Ziara's feeding and breathing problems have necessitated feeding through a "G" tube from the beginning of her life and, at the age of fifteen months, she had a tracheotomy to facilitate her breathing. The tracheotomy tube requires constant monitoring because of the many risks it poses: Ziara sometimes pulls out the tube, requiring that it be reinserted almost immediately; the tube often becomes clogged with secretions, requiring that it be cleared through suctioning; and Ziara's airway sometimes becomes too dry, requiring an aerosol treatment. Because any of these conditions is potentially life-threatening, Ziara requires twenty-four hour care.
CSB first became involved with Ziara and her family in December 1998. James, who had an older child and was pregnant with her third child, was overwhelmed by the demands of caring for Ziara. James missed four of Ziara's medical appointments during December 1998. In January 1999, James placed Ziara in out-of-home respite care, a program designed to give parents a break from the demands of caring for their special needs child. Respite care is temporary; the length of stay is typically limited to two months. Ziara stayed with the respite caregiver until March. When James failed to pick up Ziara at the end of her stay, CSB took emergency custody of her pursuant to Juv.R. 6.
CSB's primary goals for James were that she visit Ziara regularly, attend all of her medical appointments, and learn how to consistently provide for Ziara's medical needs. Before Ziara could be reunified with James, CSB wanted James to demonstrate that she could meet Ziara's extensive needs on a day-to-day basis.
On January 12, 2001, CSB moved for permanent custody of Ziara. By the time the permanent custody hearing commenced on May 1, 2001, Ziara had been in the temporary custody of CSB for nearly two years. The matter was heard by a magistrate who determined that CSB's motion for permanent custody should be granted. The trial court adopted the magistrate's decision subject to the filing of objections pursuant to Juv.R. 40. James filed timely objections to the magistrate's decision, but the trial court overruled them. James has timely appealed and has raised four assignments of error.
 II Assignment of Error Number One The evidence in support of permanent custody was insufficient and against the manifest weight of the evidence as mother was able to demonstrate that she is a suitable caretaker for the child.
 Assignment of Error Number Three The trial court's grant of permanent custody was not in the child's best interests.
This Court will address James' first and third assignments of error together because she has argued them jointly. Termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. In re Wise (1994), 96 Ohio App.3d 619, 624. Before a juvenile court can terminate parental rights and award permanent custody of a child to the moving agency, it must find clear and convincing evidence of both parts of a two-prong test.
First, it must find that one of four reasons enumerated in R.C.2151.414(B)(1)(a)-(d) exists for not returning the child to either of his parents: (a) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, (b) the child is abandoned, (c) the child is orphaned and there are no relatives available to take the child, or (d) the child has been in the temporary custody of one or more children services agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
To satisfy the second prong of the test, the court must find that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C.2151.414(B)(1). See, also, In re William S. (1996), 75 Ohio St.3d 95,97-98.
CSB satisfied the first prong of the test by establishing that Ziara had been in its temporary custody for more than twelve of the twenty-two months prior to the permanent custody hearing. Ziara was adjudicated dependent and placed in the temporary custody of CSB on May 19, 1999. The permanent custody hearing commenced on May 1, 2001. At the time of the hearing, Ziara had been in the temporary custody of CSB for almost two years. Consequently, the first prong of the permanent custody test was satisfied by clear and convincing evidence.
To satisfy the second prong of the test, CSB was required to present clear and convincing evidence that permanent custody was in the child's best interest. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must:
[C]onsider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed * * * through the child's guardian ad litem[;]
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]
R.C. 2151.414(D)(1)-(4)[1].
The evidence demonstrated that James' attendance at visitations was sporadic. James' visitation with Ziara was initially at the home of the foster mother and James was allowed liberal visitation. The case plan called for visitation of ten to fifteen hours per week. According to the first foster mother, who had Ziara for the first year, she would have allowed James to visit every afternoon, but James came about twice a week in the beginning. Over time, James' attendance dropped off. During the first year that Ziara was in the temporary custody of CSB, there were at least three month-long periods when James failed to visit Ziara. During the second year that Ziara was in CSB's temporary custody, James failed to visit her for an entire five-month period.
As James' caseworker explained at the hearing, to work toward reunification of a family, the goal of CSB is that visits increase in length and frequency over time. Visits should eventually progress to home visits and overnight visits. James' visitation never even progressed to home visits. Ziara was in the temporary custody of CSB for almost two years, but visitation never progressed beyond weekly two-hour visits at the visitation center.
James failed to attend all of Ziara's medical appointments, as was required by her case plan. One of CSB's witnesses estimated that James had attended only twenty percent of Ziara's medical appointments during the two years prior to the hearing. Although James disputed that figure when she testified, she could not offer her own estimate of how many appointments she had attended. She did not dispute that she had missed many of Ziara's appointments. Although James offered a variety of reasons for missing appointments, CSB did not find any of her excuses acceptable. For example, James initially complained that she had no transportation, so the first foster mother planned the appointments around James' schedule and provided transportation for her. Several times when she went to pick up James for the appointments, however, she was not at home.
The evidence demonstrated that Ziara requires ongoing treatment by a variety of physicians and therapists and that James did not have the level of commitment necessary to coordinate and follow through with all of the appointments. Ziara's current foster mother testified that she spends approximately one to two hours per day scheduling appointments and completing the necessary paperwork for Ziara's treatment. James had never played a role in making the appointments even though she had been encouraged by CSB and the former foster mother to do so. James' lack of commitment to addressing Ziara's needs was further demonstrated by her admission at the hearing that she did not know what medications Ziara was currently taking and her testimony that she had intended to take sign language classes so that she could communicate with Ziara but she "never got a chance to."
Although James has noted in her brief that there was evidence of bonding between Ziara and herself, this Court finds no such evidence. In fact, although some witnesses noted that Ziara would smile when she saw James, they explained that Ziara had that same reaction to any familiar face. Several witnesses gave their opinion that there did not appear to be a bond between Ziara and James. Ziara did not to look to James for comfort, did not reach out to her, and she showed no sign of separation anxiety when each visit ended. On the other hand, some of these same witnesses testified that there did appear to be a bond between Ziara and her foster mother. Ziara cuddles with her, reaches out to her for comfort, and cries when she leaves the room.
The guardian ad litem did not recommend returning Ziara to the legal custody of her mother. Although the guardian ad litem did not believe that permanent custody to CSB was in Ziara's best interest, she explained that she reached that conclusion because she did not feel that CSB would be able to find an adoptive placement for Ziara. The current foster mother testified, however, that she has agreed to be Ziara's foster mother for at least two years and that she might consider adopting her. The caseworker further testified that she would not rule out the possibility of adoption because there are people seeking to adopt who specifically request special needs children.
Ziara was in the temporary custody of CSB for twenty-three and one-half months. During that time, as indicated above, James' visitation with her was sporadic and she did not demonstrate a commitment to understanding Ziara's medical needs. James moved for legal custody on more than one occasion, but withdrew her requests before the court could address them.
Given the evidence before the trial court, it did not err in determining that permanent custody was in the best interest of Ziara. The first and third assignments of error are overruled.
 Assignment of Error Number Two CSB did not use reasonable efforts to reunite the child with the mother.
James has contended that CSB was required to prove, at the permanent custody hearing, that it had exerted reasonable and diligent efforts to reunify the family. Although R.C. 2151.414(E)(1) does refer to "reasonable case planning and diligent efforts by the agency[,]" it addresses those efforts within the context of the parent's failure to remedy the circumstances causing the child's removal from the home. "R.C. 2151.414(E)(1) places no duty on the agency to prove that it exerted reasonable and diligent efforts toward reunification." In reThompson (Jan. 10, 2001), Summit App. No 20201, unreported, at 12, citingIn re Moore (Dec. 15, 1999), Summit App. Nos. 19202 and 19217, unreported, at 24-25, appeal not allowed (2000), 88 Ohio St.3d 1481. Moreover, in this case, it was not even necessary for CSB to proceed under R.C. 2151.414(E) because the child had been in the temporary custody of CSB for more than twelve months. See R.C. 2151.414(B)(1)(d).
As this Court noted in In re Thompson, supra, at 12: "[I]t is R.C.2151.419 that requires the agency to prove to the trial court `at any hearing held pursuant to [the statutes providing for the child's removal from the home]' that it made reasonable efforts to prevent removal of the children and to work toward reunification." See, also, Juv.R. 27(B)(1). On May 19, 1999, when Ziara was adjudicated dependent and placed in the temporary custody of CSB, the trial court, through a magistrate, found that CSB had made reasonable efforts to prevent the continued removal of the child from the home.
That May 19, 1999 order was a final appealable order, but James failed to timely appeal that order. See In re Murray (1990), 52 Ohio St.3d 155, syllabus. Consequently, this Court is without jurisdiction to reach the issues disposed of at that time. Moreover, as it was a magistrate who made the finding that CSB had exerted reasonable efforts, any challenge to that finding must satisfy the requirements of Juv.R. 40. Juv.R. 40(E)(3)(b) states, in pertinent part, that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Because James failed to raise a timely objection to the magistrate's finding, she failed to preserve this issue for appellate review even if she had perfected a timely appeal from the May 1999 order. The second assignment of error is overruled.
 III
The assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BAIRD, P.J., CARR, J. CONCUR
[1] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.