**In re WISE.**

[Cite as *In re Wise* (1994), 96 Ohio App.3d 619.]

Court of Appeals of Ohio,
Wayne County.

No. 2862–W.

Decided Aug. 31, 1994.

*Karen C. Connolly,* Assistant Prosecuting Attorney, for appellee Wayne County Children Services Board.

*Julia A. Cain,* for appellant Elaine Wise.

*Gladene Hershberger,* Guardian *Ad Litem.*

BAIRD, Judge.

This cause comes before the court upon the appeal of Elaine Wise from the order of the Wayne County Court of Common Pleas, Juvenile Division, terminating her parental rights with respect to Brandy Wise.

Wise gave birth to Brandy, three months prematurely, on August 15, 1992. Brandy was born with bronchial pulmonary dysplasia ("BPD") and was hospitalized for over three months following her birth. She was attached to an apnea monitor and required supplemental oxygen on a full-time basis. When she was ready to be released from the hospital, her doctors stated that she would continue to require monitoring and oxygen. Wise expressed her inability to cope with Brandy's medical needs at that time because she had a full-time job, could not find a qualified baby sitter, and did not feel comfortable with the requirements of Brandy's medical condition. As a result, on December 18, 1992, Brandy was declared a dependent child, and the Wayne County Children Services Board ("WCCSB"), with Wise's consent, was granted temporary custody. Brandy was

immediately placed with Martha Carney, a foster parent who has extensive experience with special-needs children.

WCCSB created a case plan, approved by the court on January 21, 1993, the goal of which was to reunite Brandy with Wise. Several activities were set forth in the plan, which Wise was to complete no later than June 19, 1993. Specifically, Wise was to:

1. Work with a special-needs nurse at the Visiting Nurse Association to learn about Brandy's medical condition and equipment,

2. Undergo an alcohol assessment to determine her consumption and its effects on her care of Brandy,

3. Attend and complete infant CPR classes,

4. Make her home suitable for Brandy's medical and personal needs,

5. Arrange for a sitter qualified to handle Brandy's medical needs, and

6. Complete training on the apnea monitor.

On June 4, 1993, a guardian *ad litem* was appointed for Brandy. On July 9, 1993, a hearing was held. WCCSB stated that case plan objectives had not been met, that Wise had not visited regularly with Brandy, and that she had not regularly attended Brandy's visits to the doctor. WCCSB moved to extend temporary custody of Brandy for six months. Brandy's guardian *ad litem* objected, arguing that planning for permanent custody should begin if Brandy could not be reunified with her mother in ninety days. The court agreed and alerted Wise and Brandy's father, who are not married, that if substantial progress was not made in eliminating the need for foster care, permanent custody would be necessary. An October hearing date was set, and on August 20, 1993, court-appointed counsel was provided to Wise at her request. The case plan was amended to change the date for completion of Wise's activities to October 15, 1993, and to require psychological testing of Wise to determine her commitment towards raising Brandy.

On December 23, 1993, a hearing regarding permanent custody was held. Brandy's father indicated a desire to voluntarily surrender custody of Brandy, noting that he believed adoption was in Brandy's best interests. The WCCSB caseworker assigned to Brandy and Wise testified that she first became involved with Brandy in 1992 after reports that Wise had admitted drinking while pregnant and that, on visits to the hospital to see Brandy, there was alcohol on her breath. The caseworker indicated that Wise had completed portions of the case plan, including BPD training and CPR classes, but that other aspects of the plan were unfinished. She had not completed apnea monitor training. She did not begin alcohol and drug assessment until April 1993, following a charge of

possession of marijuana. Although she attended the alcohol screenings and meetings, she did not return for her assessment and recommendations. When the caseworker went to Wise's house for a scheduled appointment in June 1993, she learned that Wise had moved without notifying WCCSB. Wise was unable to find a qualified baby sitter, and she failed to keep appointments for her psychological evaluation, even though WCCSB provided transportation and made several sets of arrangements for her.

Wise erratically attended court-ordered visits with Brandy at the foster parent's home. Of ninety-four scheduled visits, Wise canceled ten visits and failed to keep thirty-five others. In April 1993, Wise indicated to WCCSB that she no longer wanted any Sunday visits with Brandy because the weather was nice and she did not wish to sit inside a foster home. Home visits were planned but not kept. The last visit Wise had with Brandy prior to the December hearing was September 21, 1993. She made no phone calls to the foster mother or any other efforts to communicate with Brandy during that time.

There was substantial testimony questioning Wise's commitment in view of Brandy's needs. At the time of the hearing, Brandy was still on oxygen, still had difficulty gaining weight, and was on special foods that needed careful weighing and mixing. She weighed only fifteen pounds. She still required care twenty-four hours a day. She has feeding problems, respiratory problems, and frequent ear infections which will ultimately require the insertion of tubes. Brandy becomes exhausted easily and cannot be taken places like other children. When she is exhausted, her oxygen supply drops, she refuses to eat, her weight drops, and she develops new respiratory infections. She is prone to pneumonia, and she has already suffered one case of that disease. She cannot be taken outside in winter months, except in emergency situations, and she cannot be around ill people. She is not a suitable candidate for conventional day care.

The nurse from the Visiting Nurse Service, from whom Wise was to take instruction, indicated that Wise's attendance was erratic. Wise indicated that she wanted to take care of Brandy only when she no longer had extensive needs.

Until very recently, babies in Brandy's condition did not live. As a result, medical experts cannot determine how long she will require extensive care. There was testimony that she might still require oxygen when she enters kindergarten.

Wise testified that she had not seen Brandy in the three months prior to the hearing because she was moving, working ten hours a day, having some emotional problems, and changing jobs. She testified that she did not feel she could meet Brandy's medical needs and that she believed Brandy's interests would be best served by permitting Martha Carney to adopt Brandy. She indicated that she

did not want Brandy to be adopted by a stranger and would try to provide for her if that were the only alternative.

The placement supervisor at WCCSB indicated there was a reasonable probability that Brandy would be adopted. The agency currently has a list of people seeking to adopt a special-needs child, and Martha Carney expressed interest in adopting Brandy. The guardian *ad litem* submitted a written report indicating her belief that adoption was in the best interest of Brandy.

Following the hearing, the court terminated Wise's parental rights and awarded permanent custody of Brandy to WCCSB.

Wise appeals, citing two assignments of error.

Assignment of Error I

"The trial court erred in its determination that permanent custody is in the best interests of the child Brandy Wise."

Wise argues that the trial court failed to follow statutory mandates before divesting her of her parental rights and awarding permanent custody of Brandy to WCCSB. Specifically, she argues that she did not fail continuously for a period of six months to remedy the conditions identified in the case plan.

The sections of the Ohio Revised Code that govern custody matters are to be liberally construed to provide for the care, protection, and mental and physical development of children, in a family environment, when possible, separating a child from its parents only when necessary for his or her welfare. *In re Cunningham* (1979), 59 Ohio St.2d 100, 105, 13 O.O.3d 78, 81, 391 N.E.2d 1034, 1037, construing R.C. 2151.01. Termination of the rights of a birth parent is an alternative of last resort but is sanctioned when necessary for the welfare of the child. *Id.*

Termination of a birth parent's rights, when a child is neither abandoned nor orphaned, is governed by R.C. 2151.414(B). Pursuant to this statute, the court must apply a two-pronged test. "The court must find by clear and convincing evidence that both: 1) the grant of permanent custody to the petitioning agency is in the best interest of the child, and, 2) the child cannot or should not be placed with either parent within a reasonable time." *In re Higby* (1992), 81 Ohio App.3d 466, 468, 611 N.E.2d 403, 405.

In the first prong of the test, and pursuant to R.C. 2151.414(B) through (D), the court is to consider the best interest of the child and is not to consider the effect the custody decision will have on the parent. R.C. 2151.414(D) provides:

"In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to, the following:

"(1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;

"(2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;

"(3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;

"(4) The custodial history of the child;

"(5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."

With regard to the first factor set forth in R.C. 2151.414(D), the placement supervisor at WCCSB testified that there were parents waiting to adopt special-needs children and that there was a probability that Brandy would be adopted. Martha Carney, Brandy's current foster parent and the only person with whom she had ever lived, indicated interest in adopting Brandy. Wise herself indicated that she thought an adoption by Martha Carney would be in Brandy's best interest. Brandy's father and her guardian *ad litem* similarly indicated their belief that adoption was in Brandy's best interest.

With regard to the second and fourth factors, Brandy had never lived with Wise. Wise had not seen Brandy in over three months at the time of the December hearing. She canceled or failed to keep forty-five of ninety-four scheduled visits with Brandy. She vetoed Sunday visits, beginning in April, because she preferred being outside in nice weather rather than inside with her daughter. In some instances, WCCSB arranged to transport Wise for visits with Brandy, but when they arrived she was not home. As of the hearing date, Wise was still not prepared to take Brandy home.

The third factor the court considered was Brandy's wishes, as determined by the guardian *ad litem*. As early as the July 9, 1993 hearing, the guardian *ad litem* objected to a six-month continuance of temporary custody and urged the court to decide permanent custody in ninety days.

Finally, with respect to a child's need for a permanent home, the trial judge asked extensive questions regarding Brandy's long-term prognosis and Wise's ability to be in a position to care for Brandy. Because of medical inexperience in dealing with BPD, no one could determine with certainty when Brandy might be able to lead a normal life, if ever. There was testimony that she might still be on oxygen when she entered kindergarten and further testimony that not only had

efforts to wean her from supplemental oxygen failed, but that she was requiring more, instead of less, as time went on.

In evaluating the second prong of the termination test, R.C. 2151.414(E) provides:

"In determining * * * whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with * * * his parents:

"(1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

"* * *

"(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]"

■ Wise argues that the evidence presented was insufficient to meet the requirements of R.C. 2151.414(E). On appeal, we must determine from the record whether the juvenile court, as the trier of fact, had sufficient evidence to satisfy the "clear and convincing" standard. *In re Jones* (Nov. 27, 1991), Summit App. No. 15116, unreported, at 4, 1991 WL 260205. The judgment of the court will not be reversed upon appeal if it is supported by sufficient credible evidence. *Id.*, citing *In re Hederson* (1986), 30 Ohio App.3d 187, 190, 30 OBR 329, 332, 507 N.E.2d 418, 420.

■ With respect to the criteria set forth in R.C. 2151.414(E)(1), Wise argues that she did not fail continuously for a period of six months to remedy the situation that caused Brandy to be placed with WCCSB. The record indicates otherwise. The case plan was approved by the court on January 21, 1993. By the time of the final hearing eleven months later, Wise had not completed

training with the visiting nurse, had not completed her alcohol assessment, had not made arrangements for a sitter, had not completed training on the apnea monitor, and had made no effort to begin her psychological evaluation. This evidence is sufficient and credible enough to meet the clear and convincing standard set forth in the statute.

■ Since the court is required to find that a child cannot be placed in his or her parent's home if even one of the conditions set forth in the statute is present, Wise's failure with respect to R.C. 2151.414(E)(1) is sufficient to meet the second prong of the test. However, there is sufficient credible evidence in the record that Wise failed to meet the commitment factors set forth in R.C. 2151.414(E)(4) as well. She did not visit Brandy for over three months prior to the hearing, nor did she contact her foster mother by phone to inquire about Brandy. Even though she knew that WCCSB would be seeking permanent custody of Brandy if she failed to provide an environment in which Brandy's needs could be met, she failed to complete the case plan activities. She testified at the hearing that she did not believe she could yet meet Brandy's medical needs, although sixteen months had passed since Brandy's birth. Moreover, Brandy had never spent one day with her birth mother at home.

In accordance with the foregoing analysis, we overrule Wise's first assignment of error.

## Assignment of Error II

"Elaine Wise was denied effective assistance of counsel in the course of the permanency hearing."

■ Wise argues that her trial counsel was ineffective because he failed to meet with her until the day before the hearing, no discovery was conducted, and no witnesses, other than Wise, were called. She further argues that a continuance should have been sought on the grounds that counsel needed more time to understand and investigate her life and the circumstances that prevented her from assuming responsibility for Brandy and that her attorney should have pursued the option of continued foster care.

The two-part standard set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693, for proving ineffective assistance of counsel in criminal cases is also used in cases where the state attempts to gain involuntary and permanent termination of parental rights. *In re Curley/Brown Children* (Nov. 10, 1993), Summit App. No. 16197, unreported, at 4, 1993 WL 473832. To determine when a conviction must be reversed upon a claim of ineffective assistance of counsel:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland, supra.*

In demonstrating prejudice to the defense, an appellant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus; *State v. Seiber* (1990), 56 Ohio St.3d 4, 11, 564 N.E.2d 408, 417.

The record contains no explanation as to why Wise and her attorney did not meet until the day before the hearing. Counsel was appointed by the court on August 20, 1993, more than four months before the hearing. She was advised at the July hearing that, if she could not provide a home for Brandy by the time of the hearing, permanent custody was the likely result. The only reference in the record to Wise's relationship with her attorney was made by the judge at the hearing when he mentioned "a history of communication issues between you and [your attorney]." In view of Wise's demonstrated communication problems with WCCSB, Brandy's foster mother, relevant health officials, and her own daughter, and in the absence of any evidence that the failure of her attorney to meet with her sooner was caused by the attorney, we find this portion of her argument without merit.

With respect to Wise's argument that her attorney called no witnesses, other than her, and conducted no discovery, there is again no evidence presented as to whether such witnesses were available or what pertinent facts might have been garnered by such action.

Wise also argues that counsel failed to seek a continuance on the grounds of needing more time to investigate her life and the circumstances surrounding her inability to provide for Brandy. Our review of the record indicates, however, that Wise's counsel did seek a continuance, that he did indicate that he had not met with her until the day before the hearing, and that he was seeking more time so that she could demonstrate to the court her ability to meet Brandy's needs. The record also indicates that the attorney had informally discussed the matter of a continuance with the judge prior to the hearing. Brandy's guardian *ad litem* strongly objected to a continuance, noting that Brandy had lived without a mother for nearly one and a half years, that she needed a mother, and needed her now. She noted, as did the court, that Wise had had ample notice that permanent custody would be sought and ample time to

prepare. Wise cites no authority that requires an attorney to seek a continuance on one ground versus another, or on all possible grounds. A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694; *State v. Thompson* (1987), 33 Ohio St.3d 1, 10, 514 N.E.2d 407, 416; *State v. Hamblin* (1988), 37 Ohio St.3d 153, 155–156, 524 N.E.2d 476, 478–480. In addition, this court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance. *Id.; State v. DeNardis* (Dec. 29, 1993), Medina App. No. 2245, unreported, at 4, 1993 WL 548761. We do not find that counsel's failure to seek a continuance on the grounds now argued by Wise was unreasonable.

■ Finally, Wise argues that counsel failed to forcefully pursue the option of foster care. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. When Wise testified at the hearing, she indicated she was comfortable with the idea of Martha Carney adopting Brandy and that she thought that adoption by Martha would "be best for [Brandy]." The court had made itself clear at the July 9 hearing that, if Brandy could not be reunited with Wise, a hearing regarding permanent custody would be held. We are unpersuaded that counsel's failure to seek continued foster care was not professionally competent, in view of the history of this case and his client's own statements.

Wise's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

*Judgment affirmed.*

REECE, P.J., and QUILLIN, J., concur.