OPINION
Appellant, Michelle Burris, appeals an order of the Clermont County Juvenile Court granting permanent custody of her three children, Alicia, John and Deidra Burris, to the Clermont County Department of Human Services ("CCDHS").
On February 9, 1995, CCDHS filed a complaint alleging that Alicia, John and Deidra Burris, along with Beth Long, appellant's child with a different father, were neglected children. CCDHS claimed appellant had left her children alone and unsupervised overnight. According to the complaint, appellant went on a drinking binge, and a CCDHS caseworker found appellant the next morning intoxicated and unable to care for her children.
The juvenile court granted CCDHS's request for temporary custody. CCDHS filed a reunification plan pursuant to R.C.2151.353-(D) and R.C. 2151.412. The plan called for drug and alcohol assessment by the Clermont County Recovery Center, case management, therapeutic counseling, parent education, and protective day care for the two youngest children, Deidra and John.
Shortly after February 9, 1995, Beth Long was placed in the custody of her natural father and, consequently, all future proceedings involved only Alicia, John and Deidra Burris. On March 23, 1995, a magistrate held a combined adjudicatory and dispositional hearing and concluded that the children were neglected and should remain in the temporary custody of CCDHS. The magistrate subsequently extended the temporary custody order on January 9, 1996.
On May 3, 1995, the Clermont County Grand Jury indicted appellant on four counts of child endangerment. On April 5, 1995, the Clermont County Grand Jury charged the children's father, Mark Burris, with one count of felonious sexual penetration with a specification, and one count of gross sexual imposition. On September 26, 1995, Mark Burris pled guilty to two counts of gross sexual imposition, a third degree felony. The trial court subsequently sentenced him to two consecutive two-year terms. On December 27, 1995, a jury found appellant guilty on all four felony child endangerment counts with specifications. On February 6, 1996, the trial court sentenced appellant to two and one-half to five years of imprisonment on the first count. Appellant received identical consecutive sentences on the other three counts. The trial court, however, suspended the sentences on those counts in favor of intensive probation after her release from the penal system.
On January 12, 1996, CCDHS filed a motion for permanent custody of the children, alleging that they could not or should not be placed with either of their parents within a reasonable time. A juvenile court magistrate held an adjudicatory hearing on the permanent custody motion on May 23, 1996. In a decision filed May 28, 1996, the magistrate found by clear and convincing evidence that the children could not or should not be placed with either of their parents within a reasonable time. Appellant filed objections to the magistrate's decision on June 11, 1996.
The magistrate held a dispositional hearing on June 18, 1996, to determine the best interest of the children. In an order filed July 2, 1996, the magistrate found by clear and convincing evidence that it was in the best interest of the children to grant permanent custody to the CCDHS for adoptive placement. Appellant filed objections to the magistrate's decision on July 12, 1996.
The juvenile court held a hearing on appellant's objections on September 3, 1996. On October 11, 1996, the juvenile court affirmed the magistrate's decision.
On appeal, appellant complains under a single assignment of error that CCDHS failed to fulfill the requirements set forth in R.C. 2151.414.[1] Appellant specifically argues that no clear and convincing evidence supports the juvenile court's finding that permanent commitment to the CCDHS was in the children's best interest.
R.C. 2151.414(B)(1) provides in part that a juvenile court may grant permanent custody of a child to a children services agency if the court determines by clear and convincing evidence that permanent custody is in the child's best interest, and the child cannot or should not be placed with either of his parents within a reasonable time. A juvenile court must conclude that a child cannot or should not be placed with either parent within a reasonable time if the court finds by clear and convincing evidence that one or more of the specific statutory factors cited in R.C. 2151.414(E) exist. See In the Matter of Latosha Sims (Aug. 19, 1991), Butler App. No. CA91-01-003, unreported, at 3. Of particular importance here are R.C. 2151.414(E)(5) and (6), which provide:
 (5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
 (6) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing[.]
If the juvenile court finds by clear and convincing evidence that a child cannot or should not be placed with either parent within a reasonable time, the court must also find by clear and convincing evidence that permanent custody is in the child's best interest. In making that determination, R.C. 2151.414(D) requires that the court consider all relevant factors, including, but not limited to:
 (1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child and whether a grant of permanent custody would facilitate an adoption;
 (2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
(3) The wishes of the child * * *;
(4) The custodial history of the child;
 (5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
On appeal, this court must determine from the record whether the lower court, as trier of fact, had sufficient evidence to satisfy the "clear and convincing" evidence standard. In re Wise (1994), 96 Ohio App.3d 619, 626. Clear and convincing evidence is proof sufficient to "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. The lower court's judgment will not be reversed on appeal if it is supported by sufficient credible evidence. In re Wise at 626.
CCDHS presented the juvenile court with clear and convincing evidence that the children could not or should not be placed with either of their parents within a reasonable time. When the juvenile court held its permanent custody hearing, appellant was incarcerated for offenses against the children. See R.C.2151.414(E)- (5). The evidence also clearly indicates that Mark Burris was incarcerated and would not be available to care for the children within a reasonable time. See R.C. 2151.414(E)(6).
There was also sufficient evidence presented at the dispositional hearing to establish by clear and convincing evidence that permanent custody is in the best interest of the children. Clarence Pauly, a supervisor of foster care and adoption at the CCDHS, testified about the children's need for a legally secure permanent placement. Pauly stressed the unavailability of the parents and the special needs of the children. Alicia, the oldest child, has severe mental and emotional difficulties. John and Deidra have cystic fibrosis, and Deidra also has some developmental delays. Pauly testified that under these circumstances, the children require a caregiver who will be able to provide medical care and a secure, safe and stable environment. Pauly also said that given the children's special needs for secure adoptive placement, any future contact with their natural parents would be disruptive. Pauly based his opinion, in part, on discussions with the children in which they indicated their fears and concerns about their parents contacting them once they were released from incarceration.
Pauly also testified about the children's chances for adoption. He estimated that there was an eighty to eighty-five percent chance that Alicia would be adopted. With respect to John and Deidra, he estimated a slightly lower percentage, around sixty-five to seventy-five percent, due partly to their affliction with cystic fibrosis. Based on the recommendations of Martha Gunner-Holeman, a therapist at Clermont Mercy Hospital, Pauly stated that it was his intention to secure an adoptive placement for Alicia by herself, and for John and Deidra together. Pauly's recommendation was based on the special needs of the children and the potential difficulty one family would have with all three children together. He anticipated the time frame for the adoptions to be eight months to one year for Alicia and one to one and one-half years for John and Deidra. There were, however, several families who had already expressed a desire to adopt the children, including two families who wanted to adopt all three children together.
Finally, Pauly testified that an adoptive placement would benefit the children. He felt that placement would give them a sense of permanency, a sense of a family-like setting, and the ability to grow up in a family with the potential to prosper without the fear of being abused or neglected. Pauly testified that the CCDHS needed permanent custody in order to facilitate the adoption process.
The record reveals sufficient evidence from which the trial court could have found by clear and convincing evidence that permanent custody is in the children's best interest. This court is satisfied that the juvenile court's decision to grant permanent custody of the children to the CCDHS was proper. Appellant's single assignment of error is overruled.
Judgment affirmed.
WALSH and POWELL, JJ., concur.
[1] Mark Burris has not contested the juvenile court's permanent custody decision.