DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Lori Adams, appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to two of her minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
 I. {¶ 2} Adams is the mother of twins, B.B. and B.B., a boy and a girl, born March 21, 1995.[1] CSB first became involved with this family during February 2001 when the twins, then five years old, came to school on a day that school was not in session. School personnel took the children home but were unable to locate Adams. Adams had left the children, for an extended period of time, in the care of a neighbor who was disciplining the children by threatening them with hypodermic needles and inhalers. Because the police believed that the twins were at risk, they removed them from the neighbor's care and took them into custody pursuant to Juv.R. 6.
 {¶ 3} The reason that Adams had left her children in the care of a neighbor for an extended period of time is not clear from the record, but Adams admitted to CSB that she has a long history of substance abuse and has been using crack cocaine for several years. Adams stipulated that the twins were dependent and neglected and that her substance abuse prevented her from providing safe and appropriate care for them. Adams also admitted that she suffered from chronic depression.
 {¶ 4} Consequently, the primary goals of the case plan were that Adams be assessed by professionals regarding her substance abuse and her mental health and that she follow all recommendations resulting from those assessments. Adams completed the assessments, but she failed to follow the treatment recommendations. Although she started several different drug treatment programs, she was repeatedly terminated from the programs due to her continued cocaine use and poor attendance. She attended mental health counseling sessions sporadically but failed to take the medication that had been prescribed for her depression.
 {¶ 5} CSB moved for permanent custody and, on January 8, 2003, an evidentiary hearing was held. The trial court granted CSB's motion and placed the twins in the permanent custody of CSB. Adams appeals and raises three assignments of error.
 II. Assignment of Error No. 1
"The Trial Court's February 4, 2003 Judgment Entry Granting CSB Permanent Custody Is Void As To Mother, As She Was Not Properly Served Process Of Notice Of The Permanent Custody Motion And Hearing."
 {¶ 6} Adams contends that, because she was not properly served with notice of the permanent custody hearing, the trial court lacked personal jurisdiction over her and its judgment is void. Even if we were to find that service was defective in this case, service is not the only means by which a court can attain personal jurisdiction over a party. A court acquires personal jurisdiction over a party either by service of process or by voluntary appearance and submission of the party or the party's legal representative to the court's jurisdiction. Maryhew v. Yova
(1984), 11 Ohio St.3d 154, 156. "The latter may more accurately be referred to as a waiver of certain affirmative defenses, including jurisdiction over the person under the Rules of Civil Procedure." Id. Adams voluntarily attended and participated in the permanent custody hearing, and raised no claim at that time that the trial court lacked personal jurisdiction. Therefore, she allowed the trial court to acquire personal jurisdiction over her. The first assignment of error is overruled.
 Assignment of Error No. 2
"The Trial Court Clearly Erred In Failing To Appoint Counsel For The Children, Or Minimally, In [Not] Investigating The Matter Further, Upon Receiving Notice That Their Wishes Differed From Those Of The Guardian Ad Litem."
 {¶ 7} Adams contends that the trial court erred in failing to appoint counsel for the twins. Some appellate courts have found reversible error in certain situations where a trial court failed to appoint counsel for the children in a permanent custody case following a specific request that it do so. See, e.g., In re Williams, 11th Dist. Nos. 2002-G-2454 and 2002-G-2459, 2002-Ohio-6588. In this case, however, no request was made that the trial court appoint counsel for the children. Generally, an appellate court will not consider any error that could have been, but was not, called to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. State v. Childs
(1968), 14 Ohio St.2d 56, paragraph three of the syllabus. Because this issue was not raised in the trial court, we will not consider it for the first time on appeal. The second assignment of error is overruled.
 Assignment of Error No. 3
"The Trial Court Clearly Erred And Abused Its Discretion In Granting Permanent Custody To CSB, Where The Evidence Failed To Support A Finding Of Unfitness Of Mother For Either Custody Or Visitation Puroses; And Given The Attachment Of The Children To Mother, That The Children Wanted To Return To Mother's Home, And That Their Relationship Could Have Been Preserved With A Permanent Plan Option Other Than Permanent Custody."
 {¶ 8} Through her final assignment of error, Adams asserts that the trial court erred in granting permanent custody of the twins to CSB.[2] Termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. In re Wise (1994), 96 Ohio App.3d 619,624. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, who is not abandoned or orphaned, it must find by clear and convincing evidence that (1) either (a) the child has been in the temporary custody of the agency for at least twelve months of the prior twenty-two-month period, or (b) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and2151.414(B)(2).
 {¶ 9} The trial court found that the twins had been in the temporary custody of CSB for more than twelve of the past twenty-two months and that finding was supported by the record. According to R.C.2151.414(B)(1):
"[A] child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
 {¶ 10} The twins were removed from their home on February 14, 2001. They were adjudicated dependent and neglected, pursuant to R.C.2151.28, on March 27, 2001, which is earlier than sixty days after their removal. The permanent custody hearing was held on January 8, 2003. By the time of the hearing, the children had been in the temporary custody of CSB for more than twenty-one months. Consequently, the first prong of the permanent custody test was satisfied.
 {¶ 11} To satisfy the best interest prong of the permanent custody test, CSB was required to establish, by clear and convincing evidence, that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C.2151.414(B)(1) and 2151.414(B)(2). When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must:
"[C]onsider all relevant factors, including, but not limited to, the following:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4).[3]
 {¶ 12} "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." See In re Smith (Jan. 2, 2002), 9th Dist. No. 20711; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.
 {¶ 13} Adams' caseworker testified that Adams regularly attended weekly visitation with the children except for a few months at the end of 2001 and beginning of 2002, when Adams missed several visits without explanation. The caseworker indicated that Adams interacted appropriately with the twins during visits and that there appeared to be a strong bond between Adams and her children. The caseworker further elaborated, however, that throughout the almost two years that the twins were in CSB custody, visits had never progressed beyond weekly supervised visits because CSB was concerned that Adams was still using cocaine. Adams had not completed drug treatment and had never consistently provided urine samples to demonstrate that she could remain sober for an extended period of time. For that reason, the caseworker, a seventeen-year veteran, did not believe that Adams could parent the twins on a daily basis.
 {¶ 14} According to the caseworker, the children expressed a desire to return to their mother's custody. The trial court, however, did not interview the children who were seven years old at the time of the hearing. The guardian ad litem indicated that it was in the children's best interests to be placed in the permanent custody of CSB. The guardian ad litem explained that she had personally supported the goal of reunification for quite some time because she believed that the children wanted to go home and that Adams truly loved her children. She further explained that her dedication to the goal of reunification dwindled as nearly two years had passed and Adams had not competed drug treatment or dropped urine on a regular basis and had made little progress toward "get[ting] her act together." The guardian stressed that, after nearly two years in multiple foster homes, the children needed some permanency in their lives.
 {¶ 15} The twins' custodial history included that they had been in the temporary custody of CSB for twenty-one of the twenty-two months preceding the hearing. As this Court has stressed, however, "the time period in and of itself cannot be held against the parent without considering the reasons for it and the implications that it had on [these children]." In re Smith (), 9th Dist. No. 20711.
 {¶ 16} The children remained in the temporary custody of CSB for nearly two years because CSB was giving Adams time to complete substance abuse treatment, to demonstrate that she could remain sober, to attend counseling, and to take the medication that had been prescribed to treat her depression.
 {¶ 17} Adams admitted that she has a history of addiction to crack cocaine. The recommendations of her assessment were that she provide weekly urine samples and that she complete a drug treatment program and whatever follow-up care was recommended. Adams started three different drug treatment programs but was terminated from the first two due to noncompliance, which included positive drug screens and failure to attend sessions. Adams began a third program shortly before the permanent custody hearing but she was still undergoing an assessment and had not yet begun the actual treatment.
 {¶ 18} Several of Adams' drug screens were positive for cocaine and, although Adams had several negative screens, she often failed to submit urine samples when required. According to Adams' caseworker, Adams never submitted urine screens on a weekly basis, and during a several-month period of 2002, she failed to submit any urine screens at all. Adams failed to comply with a specific request by the magistrate to submit a urine sample after she left a hearing on March 19, 2002, even though she had indicated during the hearing that she would do so. Adams' caseworker communicated with Adams on a regular basis and continually told her that she would need to complete these objectives before her children could return home. The caseworker testified that Adams just kept telling him that she was going to try harder.
 {¶ 19} Adams also admitted that she suffers from chronic depression but she did not follow through with the recommended treatment, which included medication and regular counseling. Adams' attendance at her mental health counseling sessions was "very poor," according to her caseworker. In fact, her attendance was so poor that she was terminated from one program and did not begin with another service provider until shortly before the permanent custody hearing. She had missed sessions there as well and, at the time of the hearing, she was still undergoing a new assessment and had not yet begun counseling.
 {¶ 20} The caseworker further testified that the children were in need of a permanent placement and Adams could not provide such a placement for them at the current time or in the near future, nor did she have any relatives that were willing and suitable for placement of the twins.
 {¶ 21} The trial court had ample evidence to support its decision that it was in the best interests of the twins to be placed in the permanent custody of CSB. Because both prongs of the permanent custody test were satisfied, the trial court did not err in placing B.B. and B.B. in the permanent custody of CSB. The third assignment of error is overruled.
 III. {¶ 22} Adams' three assignments of error are overruled and the judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
BATCHELDER, J. CONCURS.
CARR, J. CONCURS IN JUDGMENT ONLY
[1] Adams also has an older son, who is in the custody of his father pursuant to a voluntary agreement. His custody is not at issue in this case.
[2] Although Adams devotes several pages of her brief to a discussion of a parent's constitutional right to raise her children and the significance of that right, it is important to note that she has not raised a constitutional challenge to R.C. 2151.414. Moreover, even if she had raised a constitutional challenge to the statute, she failed to raise such challenge below and we will not address it for the first time on appeal. See Atkinson v. Grumman Ohio Corp. (1988), 37 Ohio St.3d 80,82.
[3] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.