OPINION
{¶ 1} Appellant, Wilmon Earl Damron, appeals from the April 7, 2003 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, sustaining the motion of appellee, Franklin County Children Services ("FCCS") for permanent custody of appellant's minor children. We find no error and affirm the judgment of the trial court.
[¶ 2] Charles Ruben Damron ("Ruben") was born September 4, 1988, Wilma Denise Damron ("Dee Dee") was born August 8, 1989 and Tracy Luke Damron ("Luke") was born January 16, 1995. All three children were born to appellant and Yvonne Nixon. The record reveals that in 1999, FCCS received responsibility for this case from Perry County Children Services when appellant relocated to Columbus. The Perry County agency had become involved with the Damron children in 1998, following an incident of domestic violence between appellant and Ms. Nixon that resulted in both parents being arrested. At the time appellant moved to Columbus, the Perry County agency had placed all three children with appellant under court ordered protective supervision. In December 1999, the children were removed from appellant's home for a 30-day period, by agreement of appellant and FCCS, while appellant underwent surgery and recuperation. The children were not returned to appellant after the expiration of this 30-day period because appellant had been evicted from his home and had not obtained adequate substitute housing. FCCS obtained temporary custody of the Damron children in January 2000.
[¶ 3] The court appointed a guardian ad litem for the children and the children were placed with foster parents. The court approved a case plan in an attempt to reunite the children with their parents. Both parents signed the case plan and indicated they agreed with the plan.
[¶ 4] The case plan required appellant to maintain stable housing and employment, demonstrate his ability to consistently provide for the children's basic needs, maintain visitation with the children and interact with the children in a positive manner, attend family counseling, follow therapist recommendations, refrain from using physical discipline, attend parenting classes, undergo a psychological assessment, improve anger management skills and take classes regarding same if indicated, and address domestic violence and alcohol issues.
[¶ 5] On December 11, 2001, FCCS filed a motion for permanent custody of the children pursuant to R.C. 2151.413. The evidentiary hearing on the motion took place on September 25, 2002, November 12, 2002 and November 13, 2002. On April 7, 2003, the trial court issued a decision and judgment entry, including findings of fact and conclusions of law, sustaining the motion to commit the Damron children to the permanent custody of FCCS for the purposes of adoption. The judgment effectively terminated the parental rights of both appellant and Ms. Nixon, but the parental rights of Ms. Nixon are not the subject of this appeal.
[¶ 6] Appellant timely appealed and asserts the following four assignments of error:
I. The evidence and facts presented to the court below are insufficient to support its finding granting permanent custody of the minor children to FCCS and not to appellant.
II. The trial court below erred to the prejudice of appellant by its improper and erroneous legal interpretation and application of the provisions of RC Sections 2151.414(B)(1)(a-d), RC 2515.414(D)(1-5) and RC2151.414(E)(1-16) to the facts and evidence presented.
III. The judgment of the court below is contrary to law.
IV. The appellant was deprived of his rights to a fair trial by the actions/inactions of FCCS, its attorney and the GAL in their failure to disclose to the court below pertinent information within their knowledge concerning the foster parent, Larry Reinhard [sic].
[¶ 7] Appellant's first, second and third assignments of error, and his argument with respect to same, are interrelated and will be addressed together. Appellant argues the trial court erred in failing to consider the factors contained in R.C. 2151.414(E)(7) through (11), pursuant to R.C. 2151.414(D)(5). The factors in divisions (E)(7) through (11) pertain to a determination of whether or not the children can be placed with either parent within a reasonable time, or should be placed with either parent. Appellant's argument is not well-taken because the trial court was not required to engage in such an inquiry with respect to the Damron children.
 {¶ 8} R.C. 2151.414(B) provides, in pertinent part:
(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28
of the Revised Code or the date that is sixty days after the removal of the child from home.
(Emphasis added.)
[¶ 9] The plain language of R.C. 2151.414(B)(1)(a) reveals that this subsection is only triggered when none of the remaining three subsections are triggered. In the present case, subsection (d) was triggered because, as appellant does not dispute, the Damron children had been in FCCS' custody for the requisite time period. Because the facts trigger subsection (d), they cannot and do not trigger subsection (a). As such, it was unnecessary for the court to analyze whether or not the Damron children could be placed with either of their parents within a reasonable time, or should be placed with either parent, under R.C.2151.414(B)(1)(a). Id. Accordingly, the court did not err in failing to consider the factors contained in R.C. 2151.414(E)(7) to (11).
[¶ 10] Where the second prong of the statutory test is satisfied, the court's only consideration is the best interest of the child, which is determined by considering the factors set forth in R.C. 2151.414(D) in light of the facts of the particular case. In re Thompson, Franklin App. No. 02AP-557, 2003-Ohio-580, discretionary appeal not allowed,98 Ohio St.3d 1512, 2003-Ohio-1572, citing In re Williams, Franklin App. No. 02AP-924, 2002-Ohio-7205. Appellant argues that the credible evidence in the record is insufficient to support the trial court's determination that a permanent commitment to FCCS is in the best interest of his children. In considering the trial court's decision to grant permanent custody of the Damron children to FCCS, this court must determine whether the record contains the requisite evidence to satisfy the clear and convincing standard. In re Wise (1994), 96 Ohio App.3d 619. Clear and convincing evidence requires that the proof "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Coffman (Sept. 7, 2000), Franklin App. No. 99AP-1376, citing Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
[¶ 11] In determining the best interest of the child in accordance with R.C. 2151.414(D), a trial court is required to consider all relevant factors including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
[¶ 12] First, the trial court was required to consider the Damron children's relationships and interactions with their parents, relatives and foster parents. The FCCS caseworker, Lisa McKinley, testified that she had been involved with the children since June 1999. She testified that Ms. Nixon failed to attend any of her one-hour, biweekly visitations with the children from February 2001 through October 2001. After October 2001, Ms. Nixon was allowed visitation with the children every other weekend. According to Ms. McKinley, Ms. Nixon never consistently exercised this visitation and would sometimes miss visitation for a month or more at a time.
[¶ 13] Ms. McKinley further testified that appellant often hit the children with a belt in order to control their behavior. After Ms. McKinley told appellant that this was not appropriate and placed in the case plan a prohibition on hitting the children with a belt, appellant told the caseworker that he felt it was appropriate for him to use a belt and he intended to continue to do so. She further testified that, during visitation, appellant would talk negatively about the foster parents and about Ms. Nixon, and would continue to do so even after the children asked him to stop.
[¶ 14] Ms. McKinley testified that, though appellant did exercise his weekly one-hour visitation sessions regularly, eventually they were terminated by the court because of appellant's threatening, disruptive and inappropriate behavior toward the children. She related that during "the last two visitations that he had had where we had supervised the contact between him and the children, they were getting so out of hand that it was difficult for the case aid to maintain safety during the visitation." (November 12, 2002 Tr. at 75-76.)
[¶ 15] Ms. McKinley testified that appellant does not take into consideration his children's opinions or feelings and does not discuss with the children how they feel. She testified that appellant speaks negatively about people or activities that the children like, and if they try to tell him their opinion, he interrupts them and will not accept their opinions. The children have told Ms. McKinley that this hurts their feelings and makes them depressed. Ms. McKinley testified that, as of the time of trial, Ruben did not want to speak to appellant because he feels appellant does not respect him.
[¶ 16] Ms. McKinley testified that appellant, "made it adamantly clear that he had a problem with women and he made that abundantly clear to his daughter and it affected her. It also affected her relationship with her brother, Ruben, and how Ruben saw women." (November 12, 2002 Tr. at 68.) In a letter, one of the family's counselors related certain aspects of the counseling sessions. Therein, the counselor states that, "Mr. Damron tells Dee Dee she is `fat' or `Kentucky healthy' and discounts this as a joke when confronted." (FCCS Exhibit 9.)
[¶ 17] With respect to family counseling, Ms. McKinley related that appellant refused to discuss things that the children and the counselor wanted to discuss, the children became extremely agitated as a result of each counseling session, and eventually the counselor terminated the sessions. FCCS Exhibit 9 contains a reference to a session that occurred on July 26, 2001, wherein appellant, " `grabs' Luke's arm and tells him to shut up and sit down."
[¶ 18] Ms. McKinley testified that, during telephone conversations between appellant and the children, appellant would say "inappropriate" and "nasty" things and as a result, the children, "were becoming very angry and they didn't want to have to talk to him on the phone." (November 12, 2002 Tr. at 77.) As of the time of trial, appellant had not visited with the children since October 2001 and though the children were permitted to initiate telephone contact with appellant, Ruben and Luke had not done so, and had verbalized a desire not to have telephone contact with their father. Dee Dee had attempted to telephone her father occasionally.
[¶ 19] Ms. McKinley was questioned on direct examination about the degree to which the children are bonded with their parents and foster parents. She testified that, based upon her observations of the children and her conversations with them, the children are bonded with their foster families. She stated that the children enjoy visitation with their mother but do not feel safe living with her and do not desire to reunify with her. With respect to appellant, Ms. McKinley stated:
Dee Dee occasionally likes to call her father. She's very nonchalant about it and doesn't feel that she has to but every once in awhile she will miss him and she will call him. Ruben and Luke are very angry with their father and do not wish to have any contact whatsoever with him at this time. Dee Dee feels comfortable having some phone contact with her father but does not feel that she wants to live with him at this time.
(November 12, 2002 Tr. at 81-82.)
[¶ 20] The guardian ad litem testified that, based on her consideration of whom the children are bonded with, it is her recommendation that all three children be permanently committed to FCCS. She stated that appellant is not, and will not be in the foreseeable future, in a position to have the children returned to his care. She specifically requested that the court grant FCCS' motion.
[¶ 21] The foregoing evidence amply demonstrates that the children have little or no bond with appellant, and the interactions and relationships between appellant and the children are permeated with threatened or actual physical violence, anger, negativity, hurtfulness and resentment. This weighs heavily against appellant in the analysis to be undertaken pursuant to R.C. 2151.414(D).
[¶ 22] Pursuant to R.C. 2151.414(D)(2), we next consider that the guardian ad litem recommended that the court grant FCCS' motion for permanent custody. This factor thus weighs against appellant.
[¶ 23] As stated earlier, the Damron children had been in the custody of FCCS for 12 or more months of a consecutive 22-month period, and had not lived with appellant in over 33 months at the time of trial. Thus, the custodial history of the children, which we must consider pursuant to R.C. 2151.414(D)(3), weighs against appellant.
[¶ 24] Finally, we consider evidence relevant to R.C.2151.414(D)(4), the Damron children's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to FCCS. Both the guardian ad litem and the FCCS caseworker stated that custody of the children could not be returned to either parent within any reasonable period of time.
[¶ 25] At the time of trial, Dee Dee and Ruben lived with paternal relatives, and Luke lived with a foster family and had visitation with a paternal relative who FCCS viewed as a prospective adoptive placement. Ms. McKinley testified that all of these relatives are "very much" interested in adoption, but are not interested in temporary legal custody because they do not wish any contact with appellant. (November 12, 2002 Tr. at 83.) Despite the fact that no relative has expressed willingness to take the children on a legal custody basis, there is a reasonable probability that the children will be adopted by these prospective relative placements. Ms. McKinley testified that, in her opinion, adoptive placements with the aforementioned relatives would "greatly" benefit the Damron children. (November 12, 2002 Tr. at 84.) Additionally, these relatives live on the same street so that adoption by these relatives would provide the children frequent interaction with each other. In light of all of this evidence, we conclude, as the trial court did, that R.C. 2151.414(D)(4) weighs against appellant.
[¶ 26] We find that FCCS established by clear and convincing evidence that the Damron children's best interests are served by placing them in the permanent custody of FCCS, which will facilitate their adoption by willing relatives and thereby secure for the children the permanency they need. Additionally, the trial court correctly applied the statutory law applicable to its determination and its judgment was not contrary to law. Accordingly, appellant's first, second and third assignments of error are overruled.
[¶ 27] Finally, in appellant's fourth assignment of error, he claims he was deprived of his right to a fair trial because, he alleges, FCCS and its counsel, and the guardian ad litem "fail[ed] to disclose to the court below pertinent information within their knowledge concerning the foster parent, Larry Reinhard [sic]."
[¶ 28] In his brief, appellant argues that, if the court had been apprised of the "actual reason" FCCS removed the children from the home of the Rhineharts, appellant, "could have used that information to more clearly explain his actions and concerns and mitigate the character assassination by FCCS and the GAL." (Brief of appellant at 20.) Appellant characterizes this allegedly missing information as "exculpatory" and appears to argue that the trial court would have somehow arrived at a different result had the court been aware of this.
[¶ 29] Whatever the nature of the evidence regarding the "real reason" the children were removed from the Rhinehart home, which may arguably be irrelevant and inadmissible under Evid.R. 403, we are not persuaded that it would have overweighed all of the evidence presented by FCCS germane to the best interest factors of R.C. 2151.414(D). Accordingly, we find appellant was not denied a fair trial and overrule his fourth assignment of error.
[¶ 30] Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in granting permanent custody to FCCS of Charles Ruben Damron, Wilma Denise Damron and Tracy Luke Damron.
Judgment affirmed.
WATSON, J., concurs.
LAZARUS, J., concurs in judgment only.
 Summary:
The court affirmed the grant of permanent custody to the children services agency, finding that the agency had demonstrated by clear and convincing evidence that the best interests of the children would be served by a grant of permanent custody to the agency. The court also held that the trial court was not required to analyze whether the children could be placed with either parent within a reasonable time, or should be so placed, because when the facts trigger R.C. 2151.414(B)(1)(d), as they did in the present case, they cannot and do not trigger R.C.2151.414(B)(1)(a), by the plain language of that subsection.