DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Jane Knight ("Jane") and Howard O. ("Howard"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I. {¶ 2} Jane and Howard are the natural parents of T.O., born November 28, 2001. T.O. was placed in temporary emergency custody of CSB shortly after her birth. The child did not go home from the hospital with her mother because Jane had tested positive for cocaine during her pregnancy and had previously had her rights to three other children involuntarily terminated due to her long-standing problem with drug abuse.
 {¶ 3} On December 18, 2001, pursuant to a stipulation by both parents, T.O. was adjudicated a dependent and neglected child and was placed in the temporary custody of CSB. Case plans were developed for both parents. The primary goal of Jane's case plan was that she stop abusing drugs and that she receive an assessment and treatment for her mental health issues. Although substance abuse by Howard was not initially a major concern, it became a key concern of CSB after Jane alleged that Howard was abusing drugs and Howard's urine samples tested positive for cocaine.
 {¶ 4} On October 17, 2003, CBS moved for permanent custody of T.O. Following a hearing on the motion for permanent custody as well as Howard's motion for legal custody, the trial court terminated parental rights and placed T.O. in the permanent custody of CSB.
 {¶ 5} Jane and Howard separately appealed and their appeals were later consolidated. As they each raise a similar assignment of error, their assigned errors will be consolidated to facilitate review.
 II. Jane's Assignment of Error
"The trial court's award of permanent custody and grant oflegal custody are not supported by sufficient credible evidencemeeting the burden of clear and convincing evidence thatpermanent custody and legal custody to [CSB] was in the bestinterest of [T.O]."
 Howard's Assignment of Error
"The trial court erred by finding that permanent custody wassupported by clear and convincing evidence where the bestinterest of the child indicated that legal custody to appellant(father) should have been granted."
 {¶ 6} Jane and Howard each contend that the trial court erred in terminating their parental rights. Termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. In re Wise (1994),96 Ohio App.3d 619, 624. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, who is not abandoned or orphaned, it must find by clear and convincing evidence that (1) either (a) the child has been in the temporary custody of the agency for at least twelve months of the prior twenty-two-month period, or (b) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2).
 {¶ 7} The trial court found that T.O. had been in the temporary custody of CSB for more than twelve of the past twenty-two months and neither parent challenges that finding. Instead, they focus their arguments exclusively on the best interest prong of the permanent custody test.
 {¶ 8} Initially, this Court must note that the trial court made no explicit finding that permanent custody was in the best interest of T.O. The trial court's failure to make that finding would amount to reversible error, if it had been raised by either of the parents. See In re M.B., 9th Dist. No. 21760, 2004-Ohio-597. Because neither parent has challenged that aspect of the trial court's judgment, however, this Court will not address it. This Court will confine its review to whether there was evidence before the trial court to support a finding that permanent custody was in the best interest of T.O.
 {¶ 9} To satisfy the best interest prong of the permanent custody test, CSB was required to establish, by clear and convincing evidence, that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and2151.414(B)(2). When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must:
"[C]onsider all relevant factors, including, but not limited to, the following:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C.2151.414(D)(1)-(5).
 {¶ 10} The factor set forth in R.C. 2151.414(E)(11): is that "[t]he parent has had parental rights involuntarily terminated pursuant to section 2151.353 [2151.35.3], 2151.414 [2151.41.4], or 2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child." This factor applies to Jane, but not Howard, as he is not the father of the three older siblings.
 {¶ 11} Because the evidence concerning whether permanent custody was in T.O.'s best interest is different as to each parent, this Court will address the parents separately.
 Jane {¶ 12} Jane has never cared for T.O. in her home but instead the child was removed from the hospital due to Jane's abuse of crack cocaine. There was evidence at the hearing that Jane's visitations with T.O. had never progressed beyond weekly supervised visits. In fact, during one six-month period during the case plan, Jane did not visit T.O. at all. There was evidence that CSB policy is to take a parent off the visitation schedule if they miss three consecutive visits and the parent must approach CSB and ask to be put back on the schedule. Jane missed more than six months of visits for this reason. This is a significant period of time to have no contact with T.O., particularly given that the child was very young and had never established a bond by living with her mother.
 {¶ 13} Because T.O. was less than two years old at the time of the hearing, the guardian ad litem testified on her behalf. The guardian ad litem stated that permanent custody was in the best interest of T.O. because, although Jane had been given nearly two years to accomplish the goals of her case plan, she had failed to do so. Although Jane had demonstrated that she could remain sober for brief periods of time, she continually relapsed and went back to using drugs.
 {¶ 14} T.O. had been placed outside of the home for her entire lifetime. Her mother had never cared for her in the home and, despite the fact that she was given almost two years to remedy her problem with substance abuse, she had not done so. Jane's drug assessment had indicated that she minimized her substance abuse problem and her need for treatment. She completed an intensive outpatient treatment program and remained sober briefly but relapsed during the month after completing treatment. Her counselor recommended that she enroll in a residential treatment program but she was not willing to do that. She briefly attended another outpatient program but, after she failed to continue treatment, her case was closed. Jane also had a severe depression problem that she had failed to adequately address.
 {¶ 15} Jane's parental rights to three older siblings of T.O. were involuntarily terminated in 1998. CSB had become involved in that case due to Jane's substance abuse, and she was unable to remedy the problem then, to avoid losing three other children. Several years later, faced with losing another child, she still had not been able to conquer her addiction that prevents her from parenting her child.
 Howard {¶ 16} The evidence of Howard's interaction with T.O. was that Howard attended visits on a regular basis and, at one point, visits had progressed to overnight visits at Howard's home. After one of those visits, however, Jane made allegations that Howard had brought T.O. to her home and that Howard was abusing drugs. For the protection of T.O., visitation again became supervised at the visitation center. Visits between Howard and T.O. never again progressed beyond weekly, supervised visits because he never took the necessary steps to rule out a substance abuse problem.
 {¶ 17} In an attempt to rule out any substance abuse problem by Howard, CSB required Howard to submit urine for drug screening. Howard submitted a total of 18 samples and three of those tested positive for cocaine and one tested positive for alcohol. Although Howard was to submit urine samples on numerous other occasions, he did not do so. On May 2, 2003, the trial court ordered Howard to submit urine samples every Monday and randomly as requested by CSB. He still failed to submit urine samples as required. The last time Howard submitted a urine sample was May 12, 2003, and it was positive for cocaine.
 {¶ 18} At the permanent custody hearing, Howard insisted that all of the positive test results were wrong and that he did not use cocaine. CSB's expert had testified, however that the cocaine test used to test Howard's urine is more than 99 percent accurate, that all positive results are automatically retested, and that all samples are sealed and labeled after they are submitted and that he retrieves the samples for testing from the room in which they are held.
 {¶ 19} Howard further testified that he had not submitted all of the samples that were required because, although he came to give urine samples when he was required, he was unable to do so because CSB had left no payment vouchers there for him. There was evidence at the hearing, however, that Howard had been supplied vouchers prior to the days on which he was required to submit samples. The trial court concluded that Howard was refusing to acknowledge that he had a substance abuse problem and that such a problem prevents him from being able to care for his young child.
 {¶ 20} As indicated above, the guardian ad litem stated that permanent custody was in the best interest of T.O. She emphasized that the parents had been given nearly two years but had failed to demonstrate that either one could provide a safe environment for T.O. Specifically as to Howard, she testified that Howard seemed to be in "total denial" about his drug problem. She recognized that there may be some glitches in CSB's provision of services but she did not accept Howard's excuses that his failure to comply with his case plan had been entirely due to the fault of others. "It's not possible that all this time somebody else was goofing up."
 {¶ 21} T.O. never lived with Howard, but had been in CSB custody for her entire short life. During this time, Howard refused to even submit to regular drug screens, let alone admit that he has a drug problem or receive any treatment.
 {¶ 22} The evidence before the trial court indicated that both parents had substance abuse problems that prevented them from caring for a very young child without supervision and, despite having nearly two years to work on their case plans, they had not adequately addressed these problems. In the case of Jane, she seemed to try to achieve sobriety but had been unable to do so even after losing three other children and having almost two years during this case. Howard, on the other hand, had not taken even the first step toward achieving sobriety because he refused to admit that he even used drugs despite three urine samples that tested positive for cocaine. The trial court had ample evidence before it from which it could conclude that permanent custody to CSB was in the best interests of T.O. The assignments of error are overruled.
 III. {¶ 23} The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
Whitmore, J., Batchelder, J. concur.