OPINION
{¶ 1} Appellant, Shirley Stoner, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting the motion of Franklin County Children Services ("FCCS") for permanent custody of appellant's minor son, E.S. Appellant timely appeals, assigning the following error:
The trial court erred in terminating appellant's parental rights.
Because the trial court properly granted permanent custody of E.S. to FCCS, we affirm.
 {¶ 2} E.S. was born on June 26, 1999 and is appellant's fifth child. Appellant's first three children are in the legal custody of their father, Daniel Ayres; her fourth child is deceased.
 {¶ 3} After working with appellant on neglect issues for about one year, FCCS on January 3, 2001 filed a complaint alleging E.S. was a neglected and dependent child. Following a hearing on March 22, 2001, the trial court, adopting its magistrate's decision, found E.S. to be a neglected and dependent child. Pursuant to an April 2, 2001 hearing, the trial court, through its magistrate, made E.S. a ward of the court and placed him under the court-ordered protective supervision of FCCS pursuant to R.C. 2151.353(A)(1).
 {¶ 4} On April 24, 2001, a representative of the Ohio Youth Advocate Program ("OYAP"), the agency with which FCCS contracted to provide services in this case, filed a motion for an emergency care order and a change of custody. According to the request, appellant left E.S. in the unsupervised care of her brother, contrary to a safety plan clearly stating appellant's brother was to have no contact with E.S. due to his history as a sexual abuse perpetrator. Additional concern arising out of appellant's care for E.S.'s asthmatic condition and appellant's minimal compliance with both OYAP and her case plan further supported the motion. The trial court's magistrate entered the requested emergency care order. Following a hearing on OYAP's motion, however, the court terminated the court-ordered protective supervision and emergency care order and committed E.S. to the temporary custody of FCCS pursuant to R.C. 2151.353(A)(2). Although appellant filed a motion for change of custody and visitation on July 10, 2001, the motion was subsequently dismissed because appellant failed to appear.
 {¶ 5} On March 29, 2002, FCCS moved for permanent custody of E.S. pursuant to R.C. 2151.413. As grounds for the motion, FCCS alleged under R.C. 2151.414(B)(1)(a) that permanent commitment was in the best interest of E.S. and that E.S. could not or should not be placed with either of his parents within a reasonable time period. The guardian ad litem filed a memorandum supporting permanent custody.
 {¶ 6} After multiple continuances, all but one at the request of appellant or her counsel, and the last because appellant failed to appear for the hearing, the court held an evidentiary hearing on January 10, 2003 on FCCS's motion for permanent custody of E.S. After two witnesses testified, the court recessed the hearing and rescheduled the matter for April, the trial court's next available date for the case. As the trial judge explained, "[t]hat means that there is plenty of time for [appellant] to begin visitation, to complete her program and to show to the Court that she's serious. * * * I want to make sure she understands that all is not lost when she leaves here." (January Tr. 121.)
 {¶ 7} The hearing on FCCS's motion recommenced on April 9, 2003. On August 21, 2003, the court issued its decision and judgment entry finding by clear and convincing evidence that placing E.S. in the permanent custody of FCCS and terminating appellant's parental rights was in E.S.'s best interest. The trial court entered judgment accordingly. Although the parental rights of the putative father, Cornell Williams, also were terminated, those rights are not the subject of this appeal.
 {¶ 8} Appellant's single assignment of error contends the trial court erred in terminating her parental rights and in granting permanent custody to FCCS. In considering the trial court's decision, this court must determine whether the record contains the requisite evidence to satisfy the clear and convincing standard. In re Wise (1994), 96 Ohio App.3d 619,624. Clear and convincing evidence requires that the proof "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In reCoffman (Sept. 7, 2000), Franklin App. No. 99AP-1376, citingCross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 9} Preliminarily, the posture of FCCS's motion changed from the time of its filing to the time of trial. FCCS originally sought permanent custody of E.S. pursuant to R.C.2151.414(B)(1)(a), which authorizes a court to award a public children services agency permanent custody of a child if the court determines by clear and convincing evidence that: (1) it is in the best interest of the child, (2) the child is not abandoned or orphaned or has not been in the temporary custody of a public children services agency or private agency for 12 or more months of a consecutive 22-month period, and (3) the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 10} During the closing argument of the trial, however, FCCS asserted that the trial court should grant permanent custody pursuant to R.C. 2151.414(B)(1)(d), which authorizes the court to award a public children services agency permanent custody of a child if the court determines by clear and convincing evidence that: (1) it is in the best interest of the child, and (2) the child has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999.
 {¶ 11} In resolving FCCS's motion, the trial court concluded "[t]he evidence is clear and convincing that [E.S.] has been in the temporary custody of one or more public children services agencies for twelve or more months of a consecutive twenty-two month period[,] being in placement since March of 2001 through and including the dates of trial in January and April of 2003." (Decision and Judgment Entry, 8.) The trial court, however, further concluded "[t]he evidence is clear and convincing that [E.S.] cannot be placed with either of the child's parents within a reasonable time[,] as his father has abandoned him, and his mother has only recently began [sic] working on the most difficult part of her case plan, remaining drug free." Id. Because the trial court analyzed the case under both R.C.2151.414(B)(1)(a) and (d), we do likewise.
 A. R.C. 2151.414(B)(1)(a) {¶ 12} Under R.C. 2151.414(B)(1)(a), the trial court determined E.S. could not or should not be returned to his parents. The trial court premised its determination on appellant's failure to successfully complete any of the significant elements of her case plan, despite some progress in a few areas. In re Brofford (1992), 83 Ohio App.3d 869
(concluding that "[n]oncompliance with the case plan is a ground for termination of parental rights"); In re Bailey (July 20, 2001), Geauga App. No. 2001-G-2340 (noting that noncompliance with a case plan is a basis for terminating parental rights, as "the case plan's objectives are geared toward remedying the conditions that initially caused the child's removal"). The evidence of record supports the trial court's determination.
 {¶ 13} The case plan required appellant to attend parenting classes, to attend drug and alcohol counseling, to weekly visit with E.S., to secure adequate housing and employment, and to undergo a psychological evaluation. According to appellant's testimony at the January hearing on FCCS's motion, appellant had not complied with any aspect of her case plan. Contrary to the visitation schedule, she last visited E.S. about one month prior to the hearing. Despite the plan's requirement that she obtain stable housing, appellant had lived in five residences since E.S. was removed from her care. Although appellant underwent a psychological evaluation as the case plan required, which in turn prompted her to acquire medicine from the Town Street Medical Center, appellant had yet to schedule follow-up therapy. Moreover, while the case plan required her to complete parenting classes, appellant had failed to do so. Similarly, contrary to the case plan, appellant was not employed and had not yet completed a drug or alcohol program. Rather, appellant testified she had an appointment for a 30-day program on January 20, 2003.
 {¶ 14} At the January hearing, David Payton, who worked for FCCS but previously had worked for OYAP, confirmed many of the admissions appellant made in her testimony regarding her compliance with the case plan. According to Payton, appellant had not successfully completed the visitation aspects of the case plan, which called for appellant to visit with E.S. for one hour at least one time per week. Contrary to the plan, she last saw E.S. on November 1, 2002. Her two visits with E.S. prior to the November visit were on February 15, 2002 and September 20, 2002. According to Payton, appellant similarly had not successfully completed the parenting aspects of her case plan.
 {¶ 15} Further, even though appellant claimed to have met the housing requirements of her case plan as of November 2002, Payton expressed concerns over her live-in boyfriend, the father of the child with which she was pregnant at the time of hearing. Accordingly, Payton was not satisfied that appellant had successfully achieved stable, consistent housing.
 {¶ 16} In addition to appellant's failing to secure employment as the case plan prescribed, Payton testified appellant also failed to complete the mental health aspect of her case plan. According to Payton, appellant attended a psychological evaluation on February 24, 2000, resulting in a diagnosis of bi-polar disorder and substance abuse, and she also completed an alcohol or drug assessment as a result of the psychological evaluation. She, however, failed to complete individual counseling or any treatment for drug and alcohol abuse. Payton noted that appellant began a detoxification program at Maryhaven, but she walked out, thereby failing to successfully complete the drug and alcohol aspect of her case plan. Drug screens that were provided resulted in a positive finding for THC.
 {¶ 17} On April 9, 2003, the trial court resumed the hearing on FCCS's motion for permanent custody. The testimony, in large part, involved an updated version of the evidence presented at the January hearing. According to Emily Ray, an OYAP treatment coordinator and ongoing caseworker, appellant's case plan required appellant to supply E.S.'s basic needs, including visitation and medical concerns. According to Ray, appellant was not meeting E.S.'s basic needs; rather, the foster parent or alternative care providers were doing so.
 {¶ 18} Ray testified that, pursuant to the mental health aspects of appellant's case plan, appellant underwent the required psychological evaluation, which resulted in four recommendations, including psychiatric follow up, an alcohol and drug referral, parenting classes, and ongoing counseling. In terms of the psychiatric follow up, appellant was taking Zoloft, and additional care was scheduled through Mount Carmel where she was receiving prenatal care. As far as alcohol and drug assessment, appellant completed the assessment in the month prior to the hearing, but never completed any program, even though she started one on March 12, 2003. Although appellant completed parenting classes on March 1, 2003, Ray testified appellant had no ongoing counseling because she lacked coping skills, in part attributable to her addiction to marijuana. Overall, Ray indicated appellant had not successfully completed the mental health component of her case plan.
 {¶ 19} As to the housing aspect of the case plan, Ray testified appellant was living with Kevin Burnett, who moved to Detroit, Michigan. As of the date of the April hearing, appellant contended she would have the lease for the apartment transferred from Burnett's name to her own by the end of that day. Nonetheless, at the time of the hearing, appellant had not successfully completed the housing element of her case plan. Likewise, appellant was not employed, contending she could not work because her pregnancy was high risk. Instead, appellant was receiving various sums of money from different sources of assistance, such as WIC.
 {¶ 20} Perhaps most problematic of the entire case plan is appellant's failure to comply with its alcohol and drug component. Ray testified that 13 of appellant's 21 urine screens were positive, the latest being on April 1, 2003, and the other eight tests were noncompliant. Although appellant had completed drug education programs as of March 12, 2003, she admitted she was still using marijuana. While appellant asserted she planned to return to Maryhaven to go through detoxification, Ray testified appellant needed a period of sobriety of six to 12 months, plus AA meetings, before she could be reunited with E.S.
 {¶ 21} According to Ray, appellant's visitation with E.S. was inconsistent initially, including no visits between February 15, 2002 and January 17, 2003. Nonetheless, since January 2003, appellant visited weekly with E.S., only having missed one scheduled visit in that span of time. Unfortunately, her visits were not always appropriate. Ray testified appellant provided snacks consisting of candy and soda, rather than fruits, vegetables, and juice. Appellant also discussed inappropriate topics, such as E.S.'s coming home when his return was less than secure. Moreover, contrary to her case plan, appellant was able to maintain parenting skills for only a short period of time. In addition to impairing her parenting skills, appellant's continued use of marijuana and her smoking presented concerns to E.S.'s returning home, given E.S.'s asthma and his need for breathing treatments three times per day.
 {¶ 22} With such evidence, the trial court properly could conclude the evidence was clear and convincing that E.S. could not be returned to either parent. His father had expressed no interest in asserting custody, and appellant had only begun to come to grips with her marijuana addiction that had existed since she was 12 years old. Not only does the continued addiction affect her own life, but it is potentially hazardous to E.S., who requires a mother that can provide the required daily breathing treatments. Because the evidence indicates six to 12 months as a realistic time-frame for appellant's achieving the sobriety necessary for E.S.'s care, E.S. stood to suffer dangerous living conditions should he be reunited with appellant at this time.
 {¶ 23} Appellant does not seriously contend that she has completed the case plan, but stresses that her progress warrants another opportunity for her to show reunification with E.S. is appropriate. As the trial court observed, however, by the time of the hearing on FCCS's motion, appellant had been given two years in which to address the elements of her case plan. Instead, the most difficult part of the plan, her marijuana addiction, remained largely unresolved and was affecting the parenting and counseling aspects of appellant's case plan. Indeed, appellant used marijuana as recently as eight days before the hearing. Moreover, although appellant testified she was scheduled for a detoxification appointment on March 12, 2003, she had walked out of detoxification in the past. As such, the trial court was not required to believe the March appointment would produce different results and lead to reunification, especially when reunification necessarily was premised on appellant's achieving a period of sobriety of six to 12 months, and appellant had been unable to achieve any significant period of sobriety prior to the date of the April hearing. Accordingly, FCCS demonstrated by clear and convincing evidence E.S. could not be reunited with appellant.
 B. R.C. 2151.414(B)(1)(d) {¶ 24} The record shows, and appellant does not dispute, that E.S. was in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999. Accordingly, R.C. 2151.414(B)(1)(d) is met as well.
 C. Best Interest of the Child {¶ 25} Because the trial court properly concluded the evidence met the statutory requirements of R.C. 2151.414(B)(1)(a) and (d), the trial court was obligated to assess the best interest of E.S., which is determined by considering the factors set forth in R.C. 2151.414(D) under the facts of this particular case. In re Thompson, Franklin App. No. 02AP-557, 2003-Ohio-580, at ¶ 49, appeal not allowed, 980 Ohio St.3d 1515,2003-Ohio-1572, citing In re Williams, Franklin App. No. 02AP-924, 2002-Ohio-7205, at ¶ 46-47.
 {¶ 26} In determining the best interest of the child in accordance with R.C. 2151.414(D), a trial court is required to consider all relevant factors including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 27} The trial court concluded E.S.'s best interest were served by granting permanent custody to FCCS. Again, clear and convincing evidence supports the trial court's conclusion. According to the evidence, E.S. has bonded to some degree with appellant, but he has a much stronger bond with his foster mother, who has an interest in adopting him. See R.C.2151.414(D)(1). Additionally, E.S. has no relationship with his siblings, who are in the custody of Daniel Ayres. See id. Further, presumably because of his young age, the child expressed no wishes regarding the matter, see R.C. 2151.414(D)(2); but the guardian ad litem, although not speaking for the child, recommended that permanent custody be granted to FCCS. Moreover, E.S. has been in the temporary custody of public children services agencies for 12 or more months of a 22 consecutive month period. See R.C. 2151.414(D)(3).
 {¶ 28} Finally, the relevant evidence shows E.S. needs the stability permanent placement affords, which cannot be achieved without granting permanent custody to FCCS. See R.C.2151.414(D)(4). The evidence demonstrates the lack of stability in appellant's situation and, by contrast, shows E.S. to be in a stable and permanent home with a foster mother that he has bonded with and knows very well. Because adoption cannot be achieved without granting permanent custody to FCCS, R.C. 2151.414(D)(4) weighs against appellant.
 {¶ 29} In summary, competent evidence establishes appellant failed to demonstrate a substantial compliance with the case plan and thereby failed to demonstrate she could provide a stable, secure and permanent home for E.S. that would permit reunification of E.S. and appellant. Further, the evidence is clear and convincing that E.S.'s best interest are served by placing him in the permanent custody of FCCS, thus facilitating his adoption and thereby providing him with needed permanency in his life.
 {¶ 30} For the foregoing reasons, appellant's single assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
Brown and Sadler, JJ., concur.