DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Christine Keller, appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her five minor children in the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
 {¶ 2} Keller is the natural mother of five children, each of whom has the initials "C.D."[1] Thus, the children will be collectively referred to as the C.D. children or the children. The oldest is a boy, born September 27, 1996. The next two children are girls, born July 9, 1998 and January 3, 2000. The youngest are boys, born September 2, 2002 and December 30, 2003. The father of the children voluntarily surrendered his parental rights and is not a party to this appeal.
 {¶ 3} On September 13, 2002, CSB filed a complaint, alleging that the three oldest C.D. children were dependent and neglected children and that the fourth child was also abused and endangered because he was born drug-dependent. The fifth child was not yet born and Keller had just given birth to the fourth child. At that time, CSB was primarily concerned that the fourth child had been born with valium and methadone in his bloodstream and was suffering signs of drug addiction. CSB's primary concerns at that time were the long-standing drug and alcohol problems of both parents and how those problems impacted their children.
 {¶ 4} Additional concerns arose over the next year while the children were in foster care. While the three oldest children were living in two separate foster homes, their foster parents raised concerns that each child was acting out sexually in ways that they considered inappropriate. The two girls were also exhibiting other behavior problems and were having frequent nightmares. The children were referred to individual counseling and, after extensive counseling, the counselors and CSB concluded that the three children had been sexually abused by both of their parents. Each parent was charged with rape but later pleaded guilty to felony child endangering and was sentenced to one year in prison.
 {¶ 5} CSB moved for permanent custody and the trial court held a hearing on that motion as well as a motion filed by Keller, requesting that the children be placed in the legal custody of their maternal grandmother. Following the hearing, the trial court found that the children should not be returned to their parents and that permanent custody was in their best interests. Consequently, the trial court placed the children in the permanent custody of CSB and terminated Keller's parental rights.
 {¶ 6} Keller appeals and raises two assignments of error, which will be consolidated for review because they are closely related.
 ASSIGNMENT OF ERROR I
"The trial court's decision denying [Keller's] motion for legal custody placement with the minor children's maternal grandmother was against the manifest weight of the evidence and/or contrary to law."
 ASSIGNMENT OF ERROR II
"The trial court's decision denying [Keller's] motion for legal custody placement with the minor children's maternal grandmother constituted an abuse of discretion."
 {¶ 7} Keller contends that the trial court erred by failing to place the children in the legal custody of their maternal grandmother. First, we must address whether Keller has standing to raise this challenge on appeal.
"This Court has held that a parent has standing to challenge the trial court's failure to grant a motion for legal custody filed by a nonparent because the court's denial of that motion led to a grant of permanent custody to the children services agency, which impacted the residual rights of the parent. * * * The parent has standing to challenge only how the court's decision impacted the parent's rights, however, not the rights of the third party." In re J.J., 9th Dist. No. 21226, 2002-Ohio-7330, at ¶ 36, citing In re Evans (Feb. 2, 2000), 9th Dist. No. 19489, at 5.
Thus, Keller's challenge is limited to whether the trial court improperly terminated her parental rights.
 {¶ 8} Termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. In re Wise (1994), 96 Ohio App.3d 619, 624. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C.2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 9} The first prong of the permanent custody test was satisfied by the trial court's finding that the children should not be placed with either parent. See R.C. 2151.414(E). That finding was supported by evidence that Keller had "failed continuously and repeatedly to substantially remedy the conditions" that had caused the children to be placed outside the home. See R.C. 2151.414(E)(1). The children were initially removed due to Keller's drug abuse and her inability to provide a safe and stable home for her children. Concerns about the children's safety escalated during the case plan period when it was discovered that the three oldest children had been sexually abused by both of their parents. During the 22 months that the children were placed outside the home, however, Keller made very little progress toward addressing any of these problems.
 {¶ 10} Keller has a long history of substance abuse problems, including abusing drugs while pregnant with at least two of her children, and she has never adequately addressed that problem. Throughout the case plan period, Keller continued to test positive for alcohol and several different drugs, she failed to submit urine samples as required, she never completed a drug treatment program, and she even overdosed on drugs on one occasion. Keller also had problems with domestic violence and sexual abuse that she had not begun to address. She never secured stable housing or steady employment and in fact, at the time of the permanent custody hearing, Keller was incarcerated on the felony child endangering conviction and would continue to be incarcerated for almost another year. The trial court had ample evidence before it to support a conclusion that Keller had "failed continuously and repeatedly to substantially remedy the conditions" that had caused her five children to be placed outside the home. See R.C. 2151.414(E)(1).
 {¶ 11} Next, the trial court was required to find, by clear and convincing evidence, that permanent custody was in the best interests of the children. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]"
"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C.2151.414(D)(1)-(5).
 {¶ 12} First, the trial court examined the evidence of the interaction and interrelationship of the children with Keller. The two youngest children had never resided with Keller and knew her only from supervised visitation. After the concerns about sexual abuse of the oldest children arose, visits were stopped for a period of time and then were supervised even more closely. Keller's visits with the children were described by several witnesses as chaotic. She even seemed to be overwhelmed by trying to deal with all five children at once. Keller did not set boundaries for the children and did not correct their behavior or discipline them when they misbehaved. Following the visits, the behavior of the three oldest children often regressed significantly, more than what would be considered normal in this type of situation. One of the children revealed to her therapist that, during a visit, her mother had whispered in her ear that the child should "not tell" or her mother would go to jail. The therapist observed several visits and once herself heard Keller tell one of her daughters to behave or people would think that she could not handle the child and would go to jail.
 {¶ 13} Because the children were all young, the guardian ad litem spoke on their behalf. He testified that permanent custody was in the best interest of all five children. He emphasized that Keller had not begun to address any of the many problems that prevented her from parenting her children. He indicated that he believed that the three oldest children were sexually abused while in their mother's care, particularly because their claims were revealed while they were living in two separate foster homes.
 {¶ 14} The custodial history of these children includes 22 months living away from their mother. There is apparently an even longer history with CSB with this family, but that was not developed on the record. The two youngest children were removed from Keller's custody shortly after each was born and each child had spent his entire life in foster care. The two youngest have lived together in the same foster home and the foster parent wants to adopt them. The two girls were also living together in another foster home and the foster parent would like to adopt them.
 {¶ 15} The only children who ever actually lived with Keller were her three oldest children, each of whom suffered repeated sexual abuse in their parents' home, at the hands of both of their parents. These children exhibited numerous behavioral and emotional problems from the sexual abuse that they endured and they had just begun to address those problems through counseling. All three children continued to act out sexually, even after months of therapy. The oldest child has been removed from two foster homes because his behavior posed a threat to other children in the home. Apparently aware that the sexual behavior he had exhibited was wrong, he even told his therapist that he believed that it was his fault that he was separated from his family.
 {¶ 16} During the many months that the children had been struggling to resolve all of the problems that their parents had caused, Keller had done almost nothing to address her own problems that seriously impeded her ability to parent her children. She had almost two years to work toward reunification and was unable to make any substantial progress in that direction.
 {¶ 17} The evidence further demonstrated that the children had a need for a legally secure permanent placement and permanent custody was the only way that such a placement could be accomplished. Neither parent was able to care for the children and there were no suitable relatives available for placement. Although Keller insisted that her mother was a suitable caretaker to take legal custody of the children, CSB and the trial court explored the possibility of such a placement and found it to be unsuitable. The maternal grandmother herself had a history with CSB, there was a history of violence in the home, the three oldest C.D. children suffered sexual abuse by their parents while living in the grandmother's home, and the grandmother continued to deny that Keller or her husband ever abused the children. The trial court had ample evidence before it to conclude that legal custody to the maternal grandmother was not a suitable placement for these children.
 {¶ 18} Finally, the trial court was required to consider whether any of the factors set forth in R.C. 2151.414(E)(7) through (11) were applicable. The trial court found that the factor set forth in R.C. 2151.414(E)(7)(c) was relevant here because Keller was "convicted of or pleaded guilty to * * * [a]n offense under division (B)(2) of section 2919.22 of the Revised Code * * * and the child[or] a sibling of the child * * * is the victim of the offense[.]" Id.
 {¶ 19} Given that each of the best interest factors weighed in favor of permanent custody to CSB, the trial court's conclusion that permanent custody was in the best interests of the five C.D. children was supported by clear and convincing evidence. The trial court did not err in terminating Keller's rights and placing the children in the permanent custody of CSB. The assignments of error are overruled.
 {¶ 20} The assignments of error are overruled and the judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, J., Batchelder, J., Concur.
[1] The actual last names of the children are not entirely clear from the record as the children's last names varied in court documents between their father's last name (D.), their mother's last name, and hyphenated combinations of the two names.