DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating the parental rights of appellant, Cary S., and awarding permanent custody of her minor children to appellee, the Lucas County Children Services Board ("LCCSB"). For the reasons that follow, we affirm the decision of the juvenile court.
 {¶ 2} On appeal, appellant raises the following assignments of error:
 {¶ 3} "First Assignment of Error
 {¶ 4} "The judge committed reversible error by denying appellant's motion to dismiss. The facts of this case do not satisfy the requirements of the neglect and dependency, nor rise to the level of clear and convincing evidence set forth in O.R.C. 2151.414(A)(1) and (D).
 {¶ 5} "Second Assignment of Error
 {¶ 6} "The trial court did not give any weight to appellant's efforts to improve the status of the children and herself without the help of LCCS."
 {¶ 7} Appellant's minor children are Brittany W. and Jayden P. Brittany's legal father is Alec M., whereabouts unknown, and Jayden's legal father is Mark P. The fathers were served with notice by personal service or publication. Neither father appeared in the proceedings below; however, both were represented by appointed counsel. Appellant and each child were given separate appointed counsel, and a guardian ad litem was appointed to represent the children.
 {¶ 8} On February 5, 2004, LCCSB filed an original complaint for permanent custody, alleging that Brittany and Jayden were dependent and neglected children. LCCSB's complaint alleged that appellant had a history of unstable housing, suicidal ideation, drug and alcohol abuse, and domestic violence, which had been witnessed by the children. LCCSB also alleged that Mark had a history of unstable housing, and that Alec had not maintained regular contact with Brittany. LCCSB further alleged that appellant had recently married Alan S., who was convicted of armed robbery and, at the time of the complaint, had warrants out for his arrest for parole violation.
 {¶ 9} An emergency shelter care hearing was held February 5, 2004, and the children were placed in the temporary custody of LCCSB. On April 21, 2004, an adjudication hearing was held. Appellant was present with her attorney; however, neither father appeared. The juvenile court found by clear and convincing evidence that the children were neglected and dependent.
 {¶ 10} In her first assignment of error, appellant argues that the trial court erred by denying appellant's motion to dismiss LCCSB's complaint, on the basis that the facts did not satisfy the requirements for findings of neglect and dependency, and was not supported by clear and convincing evidence. We disagree.
 {¶ 11} In order for the trial court to adjudicate a child dependent and neglected, the court must find that the state established the elements of such, as defined by R.C. 2151.03 and 2151.04, by clear and convincing evidence.
 {¶ 12} R.C. 2151.03 defines "neglected child" as any child:
 {¶ 13} "(1) Who is abandoned by the child's parents, guardian, or custodian;
 {¶ 14} "(2) Who lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian;
 {¶ 15} "(3) Whose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being;
 {¶ 16} "(4) Whose parents, guardian, or custodian neglects the child or refuses to provide the special care made necessary by the child's mental condition;
 {¶ 17} "(5) Whose parents, legal guardian, or custodian have placed or attempted to place the child in violation of sections 5103.16 and 5103.17
of the Revised Code;
 {¶ 18} "(6) Who, because of the omission of the child's parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare;
 {¶ 19} "(7) Who is subjected to out-of-home care child neglect."
 {¶ 20} R.C. 2151.04 defines "dependent child" as any child:
 {¶ 21} "(A) Who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian;
 {¶ 22} "(B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian;
 {¶ 23} "(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;
 {¶ 24} "(D) To whom both of the following apply:
 {¶ 25} "(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
 {¶ 26} "(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household."
 {¶ 27} As we have previously held, "[t]he decision of a trier of fact relating to the adjudication of the children as neglected or dependent will not be overturned as against the manifest weight of the evidence, so long as the record contains competent credible evidence by which the trial court could have formed a firm belief or conviction that the essential statutory elements for neglect or dependency have been established." (Citations omitted.) In re S. (1995), 102 Ohio App.3d 338,344-5. Pursuant to the Ohio Supreme Court, "clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Cross v. Ledford (1954), 161 Ohio St. 469, 477.
 {¶ 28} In this case, during the adjudication hearing, the following pertinent testimony was presented. LCCSB had previously filed a complaint in dependency and neglect on April 20, 2001. The children were found to be dependent and neglected on June 1, 2001, and temporary custody was awarded to LCCSB. Appellant and Mark both participated in Drug Court, but Mark was unsuccessful. Neither father successfully completed case plan services. Appellant, however, did complete case plan services and, on June 27, 2002, legal custody of the children was returned to her and LCCSB was awarded protective supervision.
 {¶ 29} In 2002, appellant lived with the children at the Aurora House during rehabilitation. Prior to successfully completing the Aurora House's program, however, appellant moved into a residence on Euclid Avenue with Alan, who she later married in 2003. Stephanie Dixon, caseworker for LCCSB on appellant's case, testified that, while on Euclid, appellant and Alan were using drugs and there was some domestic violence going on in the home. Jayden's grades were getting better, but Brittany's were dropping. Dixon testified that the kids were pretty upset during that period of time. LCCSB assisted appellant with food and clothing vouchers and helped her with her utility bills. Appellant, however, was unable to meet expenses. Dixon also testified that appellant was referred to Compass and SASI, but failed to complete either program.
 {¶ 30} Beginning in February 2003, appellant was also referred to Crystal Sparks, licensed social worker and certified chemical dependency counselor with Connecting Point and the Building Family for Success Program. The Building Family for Success Program was established by the Lucas County Alcohol and Drug Addiction Services Board ("ADAS") and received referrals from the Children's Services Board. Sparks testified that it was her goal to keep the family united. According to Sparks, appellant was encouraged to address her addiction issues by enrolling in a rehabilitation program and attending her AA meetings, and to address her mental health issues, including depression, by seeking help from Unison. Sparks testified that appellant failed to pursue any of the recommendations. Sparks testified that, although appellant had been provided some financial support, she was unable to meet her expenses and faced eviction from her Euclid residence.
 {¶ 31} In approximately August 2003, Dixon testified that she spoke with appellant about LCCSB having an Administrative Review, because of all the concerns that were going on, and the possibility that LCCSB was going to staff the case and look at possible removal. After this conversation, appellant moved to Buffalo, New York, with the children. LCCSB's protective supervision was terminated on September 25, 2003 when the children were in Buffalo. During their time in Buffalo, Dixon recalled that the assessment worker in Buffalo, to whom she had referred appellant's case, told Dixon that the kids were not enrolled in school.
 {¶ 32} Appellant returned to the Toledo area with the children in September or October 2003, and moved in with appellant's sister, who was also a drug user. Drug use by appellant and domestic violence continued at that residence as well. Due to the number of dogs in the home, Sparks testified that the condition of the home was unsanitary. Upon returning to the Toledo area, however, the children were enrolled in school.
 {¶ 33} Appellant moved the children from her sister's to live in a shelter called the Family House. Appellant married Alan in November 2003 and moved into the residence she shared with her husband, on Third Street, in December 2003. Nicole Williams, caseworker at LCCSB in the assessment specialist department, testified that she was assigned to the case in January 2004, based upon an allegation of neglect. On January 28, 2004, appellant made a suicide attempt, wherein she attempted to cut her wrist. Appellant had indicated that she was tired, had had it with Children Services, and her husband, and that she just wanted to get away. Appellant's attempt, however, was unsuccessful because Brittany had hidden all the knives and medications in the house. The children sought help and 911 was called.
 {¶ 34} Williams testified that she discovered through her investigation, prior to appellant's suicide attempt, that the children were exposed to domestic violence, between their mother and stepfather, and ongoing drug and alcohol use, including, crack cocaine, marijuana, and beer. Appellant had admitted to a relapse, but Williams also testified that the children were aware of the marijuana smoking because they could recognize the odor of it when their mother and stepfather were in the bathroom. The children verified the allegations of domestic violence between their mother and stepfather, who would yell and shove each other. The children also complained to Williams that Alan used excessive physical discipline on them. Williams verified with Alan's parole officer that there was a warrant for Alan's arrest based upon his failure to contact his parole officer. Although there was no evidence of ongoing physical violence between appellant and Mark, Jayden's father, Williams testified that appellant had a protection order against Mark for domestic violence and harassment, but would nevertheless allow him to spend the night and stay several days in her home in order for him to see Jayden.
 {¶ 35} With respect to whether the needs of the children were being met, Williams testified that the children reported running short of food in the home at times. Williams also testified that she was concerned about appellant being a danger to her children because, during her attempted suicide, not only had she attempted to cut her wrist, but she was also throwing and breaking things in the home.
 {¶ 36} After being released from the hospital, appellant went to Compass for an assessment with Pearl Oppliger, clinical services leader at Compass. Oppliger testified that appellant had previously contacted her on October 13, 2003, regarding being put on a waiting list until she could start group, and that she was scheduled her for intake appointments on October 14, 2003 and October 31, 2003, but that appellant never showed. Appellant did attend an intake appointment with Oppliger on January 30, 2004, but never showed for her group sessions, which were to begin on February 6, 2004, with Kevin Baker as her counselor.
 {¶ 37} Based on the foregoing, we find that the record contains competent credible evidence by which the trial court could have formed a firm belief or conviction that the essential statutory elements for neglect and dependency were established. The children had no stable residence for nearly a year, there was not a sufficient amount of food consistently in their home, they were subjected to domestic violence between their mother and stepfather, their mother and stepfather continually used marijuana and crack cocaine and drank beer, and the children were witnesses to their mother's attempted suicide. Although the juvenile court did not specify the statutory section under which the children were neglected and dependent, we find that there was sufficient evidence presented to support findings of neglect and dependency pursuant to R.C. 2151.03(2), (3), or (6), and R.C. 2151.04(B) or (C). Accordingly, we find appellant's first assignment of error not well taken.
 {¶ 38} In her second assignment of error, appellant asserts that the trial court failed to give any weight to appellant's efforts to improve the status of the children and herself without the help of LCCSB. In particular, appellant argues that she placed Jayden into rehabilitative programs, including counseling and ADHD treatment, and had enrolled herself in educational classes. Additionally, appellant asserts that she referred herself to Compass and SASI, neither of which she completed, but since February 5, 2004, had admitted herself into Unison and was attempting to get into a dual-diagnosis program to help with her drug usage and possible bipolar problems. Appellant further asserts that the children were never abused, that she independently enrolled them in treatment programs, and that she took them on camping trips and had weekly family fun nights with them.
 {¶ 39} In this case, LCCSB sought permanent custody by filing an original complaint. Pursuant to R.C. 2151.353(A)(4), a trial court may commit a child to the permanent custody of a public children services agency or private child placing agency, if the court determines, in accordance with R.C. 2151.414(E), that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines, in accordance with R.C.2151.414(D), that the permanent commitment is in the best interest of the child.
 {¶ 40} In accordance with R.C. 2151.414(E), in determining, at a hearing held pursuant to R.C. 2151.353(A)(4), whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, that one or more of the sixteen conditions listed in R.C. 2151.414(E)(1)-(16) exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.
 {¶ 41} In this case, upon consideration of "the adjudicatory facts and findings * * *, all prior judgment entries, motions, testimony, exhibits, arguments of counsel and all other evidence and matters of record," the juvenile court found that the circumstances in R.C.2151.414(E)(2), (4), and (14)[1] were established by clear and convincing evidence, and that the children could not and should not be placed with either parent within a reasonable period of time. The court, relying in part on the recommendation of the guardian ad litem, also held that it was in the best interests of the children for their permanent custody to be awarded to LCCSB. In particular, the juvenile court found:
 {¶ 42} "[Appellant's] chronic chemical dependency is so severe that it makes her unable to provide an adequate permanent home for the children now and as anticipated within one year after the court holds the hearing. [Appellant] has an extensive history of substance abuse. She has been in treatment numerous times. However, she has failed to maintain her sobriety.
 {¶ 43} "Mark P., the father of Jayden P. has been offered numerous services to no avail. He has failed to successfully complete substance abuse treatment; parenting classes; mental health services and has failed to maintain a relationship with his child.
 {¶ 44} "Alec M., the legal father of Brittany W. has failed to establish a parent child relationship with his child. He has failed to provide, support or care or even visit with his child.
 {¶ 45} "The parents have demonstrated a lack of commitment toward the children by failing to cooperate with the services offered and making the necessary changes in order to effectuate the changes necessary to effectively parent these children."
 {¶ 46} On appeal from an order terminating parental rights, an appellate court will not reverse the trial court's judgment if, upon a review of the record, it determines that the trial court had sufficient evidence to satisfy the clear and convincing standard. In re Bradley JohnB., 6th Dist. Nos. H-03-037, H-03-041, 2004-Ohio-1328, ¶ 24, citing, Inre Wise (1994), 96 Ohio App.3d 619, 626. An appellate court will not substitute its own judgment for that of a trial court applying a clear and convincing evidence standard where some competent and credible evidence supports the trial court's factual findings. Id., citing, C.E.Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 47} Despite appellant's independent efforts to seek counseling and educational training to meet the needs of her and her children, she nevertheless failed to follow through with numerous recommendations that she seek further drug rehabilitative services to overcome her drug dependency, or psychological assistance for her depression and suicidal tendencies. Her efforts with respect to meeting the children's needs also do not negate the fact that the children were denied stable housing because they were moved five times in less than a year. Although appellant sought assistance from Unison following the filing of LCCSB's complaint for permanent custody, she continued to regularly use crack cocaine on top of the medication she was prescribed for her bipolar diagnosis.
 {¶ 48} As stated in the juvenile court's judgment entry, we find that the court considered all evidence presented. Nevertheless, in light of the overwhelming evidence demonstrating that the children were dependent and neglected, and that appellant failed to stop using crack cocaine or seek help for her suicidal ideation, we find that the trial court did not err in finding by clear and convincing evidence that it was in the children's best interest for LCCSB to be awarded permanent custody. Appellant's second assignment of error is therefore found not well-taken.
 {¶ 49} On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal for which sum judgment is rendered against appellant on behalf of Lucas County and for which execution is awarded. See App.R. 24.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Singer, P.J., Concur.
[1] The circumstances in R.C. 2151.414(E), pertinent to this case, state:
"(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code; * * *
"(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child; * * *
"(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect. * * *".